**Presidential Documents**

Proclamation 10896 of February 10, 2025

### Adjusting Imports of Steel Into the United States

**By the President of the United States of America**

**A Proclamation**

1. On January 11, 2018, the Secretary of Commerce (Secretary) transmitted to me a report on the Secretary's investigation into the effect of imports of steel mill articles (steel articles) on the national security of the United States under section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862) (section 232). The Secretary found and advised me of his opinion that steel articles are being imported into the United States in such quantities and under such circumstances as to threaten to impair the national security of the United States.

2. In Proclamation 9705 of March 8, 2018 (Adjusting Imports of Steel Into the United States), I concurred in the Secretary's finding that steel articles, as defined in clause 1 of Proclamation 9705 (as amended by clause 8 of Proclamation 9711 of March 22, 2018 (Adjusting Imports of Steel Into the United States)), are being imported into the United States in such quantities and under such circumstances as to threaten to impair the national security of the United States, and decided to adjust the imports of steel articles by imposing a 25 percent ad valorem tariff on such articles imported from most countries. Proclamation 9705 further stated that any country with which the United States has a security relationship is welcome to discuss alternative ways to address the threatened impairment of the national security caused by imports from that country, and noted that, should the United States and that country arrive at a satisfactory alternative means to address the threat to the national security such that the President determines that imports from that country no longer threaten to impair the national security, I may remove or modify the restriction on steel articles imports from that country and, if necessary, adjust the tariff as it applies to other countries, as the national security interests of the United States require.

3. In Proclamation 9705, I also directed the Secretary to monitor imports of steel articles and inform me of any circumstances that in the Secretary's opinion might indicate the need for further action under Section 232, as amended, with respect to such imports. Pursuant to Proclamation 9705, the Secretary was authorized to provide relief from the additional duties, based on a request from a directly affected party located in the United States, for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, or based upon specific national security considerations.

In subsequent proclamations, I noted the conclusion of discussions or the agreement on certain measures with the Argentine Republic (Argentina), Proclamation 9759 of May 31, 2018 (Adjusting Imports of Steel Into the United States); the Commonwealth of Australia (Australia), Proclamation 9759; the Federative Republic of Brazil (Brazil), Proclamation 9759; Proclamation 10064 of August 28, 2020 (Adjusting Imports of Steel Into the United States); Canada, Proclamation 9894 of May 19, 2019 (Adjusting Imports of Steel Into the United States; the United Mexican States (Mexico), Proclamation 9894; and the Republic of Korea (South Korea), Proclamation 9740 of April 30, 2018 (Adjusting Imports of Steel Into the United States). President

Biden noted the conclusion of discussions or the agreement on certain measures with the European Union (EU) on behalf of its member countries, Proclamation 10328 of December 27, 2021 (Adjusting Imports of Steel Into the United States); Proclamation 10691 of December 28, 2023 (Adjusting Imports of Steel Into the United States); Japan, Proclamation 10356 of March 31, 2022 (Adjusting Imports of Steel Into the United States); and the United Kingdom (UK), Proclamation 10406 of May 31, 2022 (Adjusting Imports of Steel Into the United States), on alternative ways to address the threat to the national security. In addition, then-President Biden acknowledged the close relationship with Ukraine and exempted steel articles from Ukraine from the tariff. Proclamation 10403 of May 27, 2022 (Adjusting Imports of Steel Into the United States); Proclamation 10588 of May 31, 2023 (Adjusting Imports of Steel Into the United States); Proclamation 10771 of May 31, 2024 (Adjusting Imports of Steel Into the United States). In Proclamation 10783 of July 10, 2024 (Adjusting Imports of Steel Into the United States), President Biden noted that imports of steel articles from Mexico had increased significantly as compared to their levels at the time of Proclamation 9894. Accordingly, he implemented a melt and pour requirement for imports of steel articles that are products of Mexico and increased the section 232 duty rate for imports of steel articles and derivative steel articles that are products of Mexico that are melted and poured in a country other than Mexico, Canada, or the United States.

4. The Secretary has informed me that the initial 25 percent ad valorem tariff imposed by Proclamation 9705 has been an effective means of reducing imports, encouraging investment and expansion of production by domestic steel producers, and mitigating the threatened impairment of U.S. national security. Following the initial imposition of 25 percent ad valorem tariffs, the U.S. steel capacity utilization rate increased to above 80 percent.

5. The Secretary has also informed me that, notwithstanding the impact of the tariff imposed by Proclamation 9705, imports of steel articles from certain countries exempted from the tariff or subject to alternative agreements have increased significantly, while excess capacity in the global steel industry has begun to increase again in recent years. For example, imports from Canada increased 18 percent since Canada was excluded from the section 232 tariffs. According to the Organization for Economic Cooperation and Development (OECD), global steel excess capacity is projected to reach approximately 630 million metric tons by 2026, more than total steel production in all OECD countries. At the same time, exports of steel from the People's Republic of China (China) have recently surged, exceeding 114 million metric tons through November 2024 while displacing production in other countries and forcing them to export greater volumes of steel articles and derivative steel articles to the United States.

6. Total steel imports as a share of U.S. consumption increased significantly in 2024, reaching nearly 30 percent, similar to the import share of U.S. consumption at the time the Secretary issued his January 11, 2018, report. Imports from countries with which the United States has reached alternative agreements have increased significantly as a share of total imports, from 74 percent in 2018 to 82 percent in 2024, while imports from countries subject to quantitative restrictions remain elevated regardless of changing U.S. demand conditions and the substantial investments made to expand the capabilities of the domestic industry. Increasing and persistently high import volumes from countries exempted from the duties or subject to other alternative agreements like quotas and tariff-rate quotas have captured the benefit of U.S. demand at the domestic industry's expense and transmitted harmful effects onto the domestic industry. As steel import market share has increased, the domestic industry's performance has been depressed, resulting in capacity utilization rates persistently lower than the 80 percent target level highlighted in the Secretary's report.

7. The Secretary has informed me that imports of steel articles from Canada and Mexico have increased significantly to levels that once again threaten

to impair U.S. national security. Volumes from both Canada and Mexico increased overall, from 7.77 million metric tons in 2020 to 9.14 million metric tons in 2024. Imports have also surged in excess of historical norms of trade across numerous key product lines, such as long reinforcing bars, which have experienced import increases of 1,678 percent from Mexico and 564 percent from Canada. These surges have occurred while authorities in those countries have supported otherwise uncompetitive producers with subsidies and other interventions that have exacerbated the global excess capacity crisis. In addition, increasing import volumes and including Mexico's imports from China, support a conclusion that there is transshipment or further processing of steel mill articles from countries that remain subject to the additional ad valorem tariff proclaimed in Proclamation 9705, or from countries seeking to evade quantitative restrictions.

8. The Secretary has also informed me that alternative agreements with trading partners including Australia, the members of the EU, Japan, and the United Kingdom have been less effective in eliminating the threatened impairment of U.S. national security than the additional ad valorem tariff proclaimed in Proclamation 9705. As a result, imports of steel articles from these countries have increased as a share of total U.S. steel imports from 18.6 percent in 2020 to 20.7 percent in 2024. In addition, from 2022 to 2024, imports from countries subject to quotas (Argentina, Brazil, and South Korea) increased by approximately 1.5 million metric tons, even as U.S. demand declined by more than 6.1 million tons during the period. Argentina has continued to export steel to the United States at unsustainable quantities, especially a recent surge of semifinished products. Furthermore, Argentina's lack of data transparency has continued to be of concern for the United States. From official trade statistics released by Argentina, it is difficult to assess the levels of steel being imported from places like China and Russia, and other potential sources of excess capacity. Brazilian imports from countries with meaningful levels of overcapacity, specifically China have grown tremendously in recent years, more than tripling since the institution of this quota arrangement.

9. At the same time, these alternative agreements have not resulted in sufficient action by these trading partners to address non-market excess capacity caused primarily by China, or sufficient cooperation by these trading partners on issues like trade remedies and customs matters or monitoring bilateral steel trade. Some countries have also welcomed steel industry investments from non-market producers in countries like China seeking to exploit the agreements to obtain preferential access to the U.S. market. The agreements have therefore been detrimental to U.S. steel production and national security.

10. The Secretary has informed me of similar problems with respect to the temporary exemption for imports of steel articles and derivative steel articles from Ukraine. Rather than supporting the Ukrainian steel industry and alleviating the economic harm caused by the ongoing conflict, the benefits of this temporary exemption have accrued primarily to producers in EU member countries, which have significantly increased duty-free exports to the U.S. market of steel articles processed from Ukrainian semi-finished steel. Since 2021, imports from Ukraine have remained steady at 0.5 percent of total U.S. imports, while imports from the European Union have increased 11.2 percent to 14.8 percent. As a result of the temporary exemption, these imports enter the U.S. market subject to neither the ad valorem tariff proclaimed in Proclamation 9705, nor the tariff-rate-quota system applicable to other imports of steel articles from EU producers as proclaimed in Proclamation 10328. This has facilitated evasion of both the section 232 measures and of antidumping duties that would be paid if the finished products were imported directly from Ukraine.

11. The Secretary has informed me that producers in countries that remain subject to the program have continued to evade the measures by processing covered steel articles into additional downstream steel derivative products

that were not included in the additional ad valorem tariffs proclaimed in Proclamation 9705 and Proclamation 9980 of January 24, 2020 (Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States). Imports of products such as fabricated structural steel, prestressed concrete strand, and others, have increased significantly since the issuance of Proclamation 9705 and Proclamation 9980, eroding the domestic industry's customer base and resulting in depressed demand for steel articles produced in the United States.

12. The Secretary has also informed me of certain ongoing challenges with the product exclusion process authorized by Proclamation 9705, Proclamation 9777 of August 29, 2018 (Adjusting Imports of Steel Into the United States), and Proclamation 9980 and implemented by subsequent regulations. This process has resulted in exclusions for a significant volume of imports, in a manner that undermines the purpose of the section 232 measures and threatens to impair national security. Certain general approved exclusions remain in effect for entire tariff lines of steel articles, notwithstanding the domestic industry's potential to produce many excluded products.

13. I determine that these developments and modifications to the tariffs announced in Proclamation 9705 have undermined the program's national security objectives by preventing the domestic steel industry from achieving sustained production capacity utilization of at least 80 percent, as determined necessary in the Secretary's report of January 11, 2018. I also determine that they have failed to achieve their articulated objectives. As a result, I determine that they have resulted in significantly increasing imports of steel articles that threaten to impair the national security.

14. In light of the Secretary's findings regarding the alternative agreements with South Korea proclaimed in Proclamation 9740; Argentina, Australia, and Brazil proclaimed in Proclamation 9759; Canada and Mexico proclaimed in Proclamation 9894; EU countries proclaimed in Proclamation 10328; Japan proclaimed in Proclamation 10356; and the United Kingdom proclaimed in Proclamation 10406, I have revisited the determinations in these proclamations. In my judgment, the arrangements with these countries have failed to provide effective, long-term alternative means to address these countries' contribution to the threatened impairment to the national security by restraining steel articles exports to the United States from each of them, limiting transshipment and surges and distorted pricing, and discouraging excess steel capacity and excess steel production. Thus, I have determined that steel articles imports from these countries threaten to impair the national security, and I have decided that it is necessary to terminate these arrangements as of March 12, 2025. As of that date, all imports of steel articles and derivative steel articles from Argentina, Australia, Brazil, Canada, EU countries, Japan, Mexico, South Korea, and the United Kingdom shall be subject to the additional ad valorem tariff proclaimed in Proclamation 9705 with respect to steel articles and Proclamation 9980 with respect to derivative steel articles. In my judgment, these modifications are necessary to address the significantly increasing share of imports of steel articles and derivative steel articles from these sources, which threaten to impair U.S. national security. Replacing the alternative agreements with the additional ad valorem tariffs will be a more robust and effective means of ensuring that the objectives articulated in the Secretary's January 11, 2018, report and subsequent proclamations are achieved.

15. For the same reasons, I have also revisited the determinations in Proclamation 10403, Proclamation 10558, and Proclamation 10771. In my judgment, the arrangement with Ukraine has failed to provide effective, long-term alternative means to address Ukraine's contribution to the threatened impairment to our national security by restraining steel articles exports to the United States from Ukraine, limiting transshipment and surges, and discouraging excess steel capacity and excess steel production. Thus, I have determined that steel articles imports from Ukraine threaten to impair the national security and have determined that it is necessary to terminate the temporary

exemption for imports of steel articles and derivative steel articles from Ukraine as proclaimed in Proclamation 10403, Proclamation 10558, and Proclamation 10771. In my judgment, terminating this exemption will prevent abuses that have resulted in significantly increasing imports from sources other than Ukraine, will prevent evasion of antidumping duties, and will support the domestic steel industry without harming Ukraine's economic recovery.

16. In light of the information provided by the Secretary that significantly increasing imports of certain derivative steel articles have depressed demand for steel articles produced by domestic steel producers, I have determined that it is necessary and appropriate in light of U.S. national security interests to adjust the tariff proclaimed in Proclamation 9705 and Proclamation 9980 to apply to additional derivative steel articles. As of March 12, 2025, the additional derivative steel articles covered by this proclamation, as set out in Annex I to this proclamation, shall be subject to the ad valorem duties proclaimed in Proclamation 9705 and Proclamation 9980, except for derivative steel articles processed in another country from steel articles that were melted and poured in the United States. For any derivative steel article identified in Annex I that is not in Chapter 73 of the HTSUS, the additional ad valorem duty shall apply only to the steel content of the derivative steel article. The Secretary shall publish a notice in the *Federal Register* to this effect, including Annex I to this proclamation.

17. The Secretary has informed me that his findings with regard to the product exclusion process present circumstances that in the Secretary's opinion indicate the need for further action by the President under section 232. Accordingly, as of the date of this proclamation the Secretary is no longer authorized to provide relief from the additional duties set forth in clause 2 of Proclamation 9705 for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or a satisfactory quality or based on specific national security determinations, and the product exclusion process as authorized in clause 3 of Proclamation 9705, clause 1 of Proclamation 9777, and clause 2 of Proclamation 9980 is terminated, effective immediately. I have determined that terminating product exclusions is necessary to ensure that overly broad exclusions do not allow high volumes of imports to undermine the objectives articulated in the Secretary's January 11, 2018, report and relevant subsequent proclamations. This change will also relieve the administrative burden that the process has created. Following this proclamation, and subject to any restrictions set forth in or pursuant to other provisions of applicable law, imports of any steel article or derivative steel article from any source and in any quantity will be available to U.S. importers, provided that the additional ad valorem tariffs are paid upon entry or withdrawal from warehouse for consumption.

18. Section 232 of the Trade Expansion Act of 1962, as amended, authorizes the President to take action to adjust the imports of an article and its derivatives if the President concurs with the Secretary's finding that the article is being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security.

19. Section 604 of the Trade Act of 1974, as amended (19 U.S.C. 2483), authorizes the president to embody in the Harmonized Tariff Schedule of the United States (HTSUS) the substance of statutes affecting import treatment, and actions thereunder, including the removal, modification, continuance, or imposition of any rate of duty or other import restriction.

20. The United States will monitor the implementation and effectiveness of these actions in addressing our national security needs, and I may revisit this determination, as appropriate.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States of America, by the authority vested in me by the Constitution and the laws of the United States of America, including section 301 of title 3, United States Code, section 604 of the Trade Act of 1974, as amended,

and section 232 of the Trade Expansion Act of 1962, as amended, do hereby proclaim as follows:

(1) The provisions of Proclamation 9740 with respect to imports of steel articles from South Korea; Proclamation 9759 with respect to imports of steel articles from Argentina, Australia, and Brazil; Proclamation 10064 with respect to imports of steel articles from Brazil; Proclamation 9894 with respect to imports of steel articles from Canada and Mexico; Proclamation 10783 with respect to imports of steel articles from Mexico; Proclamation 10328 and Proclamation 10691 with respect to imports of steel articles and derivative steel articles from the EU; Proclamation 10356 with respect to imports of steel articles and derivative steel articles from Japan; Proclamation 10406 with respect to imports of steel articles and derivative steel articles from the United Kingdom; and Proclamation 10403, Proclamation 10558, and Proclamation 10771 with respect to steel articles and derivative steel articles from Ukraine shall be ineffective as of 12:01 a.m. eastern time on March 12, 2025. The provisions of clause 1 of Proclamation 9740 as applicable to imports of steel articles or derivative steel articles from Argentina, Australia, Brazil, Canada, Mexico, South Korea, and EU member countries shall be ineffective as of 12:01 a.m. eastern time on March 12, 2025. The provisions of clause 1 of Proclamation 9980 as applicable to imports of derivative steel articles from Argentina, Australia, Canada, Mexico, and South Korea shall be ineffective as of 12:01 a.m. eastern time on March 12, 2025. As of 12:01 a.m. eastern time on March 12, 2025, all imports of steel articles and derivative steel articles from these countries shall be subject to the additional ad valorem tariffs proclaimed in Proclamation 9705 and Proclamation 9980.

(2) Clause 2 of Proclamation 9705, as amended, is revised to read as follows:

"(2)(a) In order to establish certain modifications to the duty rate on imports of steel articles, subchapter III of chapter 99 of the HTSUS is modified as provided in the forthcoming annex to this proclamation set out in a subsequent *Federal Register* notice and any subsequent proclamations regarding such steel articles.

(b) Except as otherwise provided in this proclamation, or in notices published pursuant to clause 3 of this proclamation, all steel articles imports covered by heading 9903.80.01, in subchapter III of chapter 99 of the HTSUS, shall be subject to an additional 25 percent ad valorem rate of duty with respect to goods entered for consumption, or withdrawn from warehouse for consumption, as follows: (i) on or after 12:01 a.m. eastern time on March 23, 2018, from all countries except Argentina, Australia, Brazil, Canada, Mexico, South Korea, and the member countries of the European Union; (ii) on or after 12:01 a.m. eastern time on June 1, 2018, from all countries except Argentina, Australia, Brazil, and South Korea; (iii) on or after 12:01 a.m. eastern time on August 13, 2018, from all countries except Argentina, Australia, Brazil, South Korea, and Turkey; (iv) on or after 12:01 a.m. eastern time on May 20, 2019, from all countries except Argentina, Australia, Brazil, South Korea, and Turkey; (v) on or after 12:01 a.m. eastern time on May 21, 2019, from all countries except Argentina, Australia, Brazil, Canada, Mexico, and South Korea; (vi) on or after 12:01 a.m. eastern time on January 1, 2022, from all countries except Argentina, Australia, Brazil, Canada, Mexico, and South Korea, and except the member countries of the European Union through 11:59 p.m. eastern time on December 31, 2023, for steel articles covered by headings 9903.80.65 through 9903.81.19, inclusive; (vii) on or after 12:01 a.m. eastern time on April 1, 2022, from all countries except Argentina, Australia, Brazil, Canada, Mexico, and South Korea, and except the member countries of the European Union through 11:59 p.m. eastern time on December 31, 2023, for steel articles covered by headings 9903.80.65 through 9903.81.19, inclusive, and from Japan, for steel articles covered by headings 9903.81.25 through 9903.81.80, inclusive; (viii) on or after 12:01 a.m. eastern time on June 1, 2022, from all countries except Argentina, Australia, Brazil, Canada, Mexico, South Korea, and Ukraine

through 11:59 p.m. eastern time on June 1, 2023, and except the member countries of the European Union through 11:59 p.m. eastern time on December 31, 2023, for steel articles covered by headings 9903.80.65 through 9903.81.19, inclusive, and from Japan and the United Kingdom (UK), for steel articles covered by subheadings 9903.81.25 through 9903.81.78 and heading 9903.81.80, and from the member countries of the European Union, for steel articles covered by heading 9903.81.81; (ix) on or after 12:01 a.m. eastern time on June 1, 2023, from all countries except Argentina, Australia, Brazil, Canada, Mexico, South Korea, and Ukraine through 11:59 p.m. eastern time on June 1, 2024, and except the member countries of the European Union through 11:59 p.m. eastern time on December 31, 2023, for steel articles covered by headings 9903.80.65 through 9903.81.19, inclusive, and from Japan and the UK, for steel articles covered by subheadings 9903.81.25 through 9903.81.78 and heading 9903.81.80, and from the member countries of the European Union, for steel articles covered by heading 9903.81.81, and from the member countries of the European Union where the steel used in the manufacture of the steel article is melted and poured in Ukraine through 11:59 p.m. eastern time on June 1, 2024, (x) on or after 12:01 a.m. eastern time on January 1, 2024, from all countries except Argentina, Australia, Brazil, Canada, Mexico, and South Korea, and except for Ukraine in accordance with the relevant proclamation as amended, and except the member countries of the European Union in accordance with the relevant proclamation as amended, for steel articles covered by headings 9903.80.65 through 9903.81.19, inclusive, and from Japan and the UK, in accordance the relevant proclamation as amended, for steel articles covered by subheadings 9903.81.25 through 9903.81.78 and heading 9903.81.80, and from the member countries of the European Union in accordance with the relevant proclamation as amended, for steel articles covered by heading 9903.81.81, and from the member countries of the European Union where the steel used in the manufacture of the steel article is melted and poured in Ukraine in accordance with the relevant proclamation as amended, and (xi) from all countries on or after 12:01 a.m. eastern time on March 12, 2025, unless suspended. Further, except as otherwise provided in notices published pursuant to clause 3 of this proclamation, all steel articles imports from Turkey covered by heading 9903.80.02, in subchapter III of chapter 99 of the HTSUS, shall be subject to a 50 percent ad valorem rate of duty with respect to goods entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern time on August 13, 2018, and prior to 12:01 a.m. eastern time on May 21, 2019. These rates of duty, which are in addition to any other duties, fees, exactions, and charges applicable to such imported steel articles, shall apply to imports of steel articles from each country as specified in the preceding three sentences.''

(3) The first two sentences of clause 1 of Proclamation 9980 are revised to read as follows:

''In order to establish increases in the duty rate on imports of certain derivative articles, subchapter III of chapter 99 of the HTSUS is modified as provided in Annex I and Annex II to this proclamation. Except as otherwise provided in this proclamation, all imports of derivative aluminum articles specified in Annex I to this proclamation shall be subject to an additional 10 percent ad valorem rate of duty, and all imports of derivative steel articles specified in Annex II to this proclamation shall be subject to an additional 25 percent ad valorem rate of duty, with respect to goods entered for consumption, or withdrawn from warehouse for consumption, as follows: (i) on or after 12:01 a.m. eastern time on February 8, 2020, these rates of duty, which are in addition to any other duties, fees, exactions, and charges applicable to such imported derivative aluminum articles or steel articles, shall apply to imports of derivative aluminum articles described in Annex I to this proclamation from all countries except Argentina, the Commonwealth of Australia (Australia), Canada, and the United Mexican States (Mexico), and to imports of derivative steel articles described in Annex II to this proclamation from all countries except Argentina, Australia, Brazil, Canada, Mexico,

and South Korea; (ii) on or after 12:01 a.m. eastern time on January 1, 2022, these rates of duty, which are in addition to any other duties, fees, exactions, and charges applicable to such imported derivative aluminum articles or steel articles, shall apply to imports of derivative aluminum articles described in Annex I to this proclamation from all countries except Argentina, Australia, Canada, the member countries of the European Union, and Mexico, and to imports of derivative steel articles described in Annex II to this proclamation from all countries except Argentina, Australia, Brazil, Canada, the member countries of the European Union, Mexico, and South Korea; (iii) on or after 12:01 a.m. eastern time on April 1, 2022, these rates of duty, which are in addition to any other duties, fees, exactions, and charges applicable to such imported derivative aluminum articles or steel articles, shall apply to imports of derivative aluminum articles described in Annex I to this proclamation from all countries except Argentina, Australia, Canada, the member countries of the European Union, and Mexico, and to imports of derivative steel articles described in Annex II to this proclamation from all countries except Argentina, Australia, Brazil, Canada, the member countries of the European Union, Japan, Mexico, and South Korea; (iv) on or after 12:01 a.m. eastern time on June 1, 2022, these rates of duty, which are in addition to any other duties, fees, exactions, and charges applicable to such imported derivative aluminum articles or steel articles, shall apply to imports of derivative aluminum articles described in Annex I to this proclamation from all countries except Argentina, Australia, Canada, the member countries of the European Union, Mexico, and the UK, and to imports of derivative steel articles described in Annex II to this proclamation from all countries except Argentina, Australia, Brazil, Canada, the member countries of the European Union, Japan, Mexico, South Korea, and the UK, and except from Ukraine through 11:59 p.m. eastern time on June 1, 2023; (v) on or after 12:01 a.m. eastern time on March 10, 2023, these rates of duty, which are in addition to any other duties, fees, exactions, and charges applicable to such imported derivative aluminum articles or steel articles, shall apply to imports of derivative aluminum articles described in Annex I to this proclamation from all countries except Argentina, Australia, Canada, the member countries of the European Union, Mexico, the UK, and Russia, and to imports of derivative steel articles described in Annex II to this proclamation from all countries except Argentina, Australia, Brazil, Canada, the member countries of the European Union, Japan, Mexico, South Korea, and the UK, and except from Ukraine through 11:59 p.m. eastern time on June 1, 2023; (vi) on or after 12:01 a.m. eastern time on June 1, 2023, these rates of duty, which are in addition to any other duties, fees, exactions, and charges applicable to such imported derivative aluminum articles or steel articles, shall apply to imports of derivative aluminum articles described in Annex I to this proclamation from all countries except Argentina, Australia, Canada, the member countries of the European Union, Mexico, the UK, and Russia, and to imports of derivative steel articles described in Annex II to this proclamation from all countries except Argentina, Australia, Brazil, Canada, the member countries of the European Union, Japan, Mexico, South Korea, and the UK, and except from Ukraine om accordance with the relevant proclamation as amended; and (vii) on or after 12:01 a.m. eastern daylight time on March 12, 2025, unless suspended, these rates of duty, which are in addition to any other duties, taxes, fees, exactions, and charges applicable to such imported derivative steel articles, shall apply to imports of derivative steel articles described in Annex II to this proclamation from all countries.''

(4) Except as otherwise provided in this proclamation, all imports of derivative steel articles specified in Annex I to this proclamation or in any subsequent annex to this proclamation, as set out in a subsequent notice in the *Federal Register,* shall be subject to an additional 25 percent ad valorem rate of duty, with respect to goods entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m.

eastern daylight time on the Commerce certification date in clause 8. These rates of duty, which are in addition to any other duties, taxes, fees, exactions, and charges applicable to such imported derivative steel articles, shall apply to imports of derivative steel articles described in Annex I to this proclamation from all countries, but shall not apply to derivative steel articles processed in another country from steel articles that were melted and poured in the United States. The Secretary shall continue to monitor imports of the derivative articles described in Annex I to this proclamation, and shall, from time to time, in consultation with the United States Trade Representative, review the status of such imports with respect to the national security of the United States.

(5) For purposes of implementing the requirements in this proclamation, importers of steel derivative articles shall provide to U.S. Customs and Border Patrol within the Department of Homeland Security (CBP) any information necessary to identify the steel content used in the manufacture of steel derivative articles imports, covered by this Proclamation. CBP shall implement the information requirements as soon as practicable.

(6) Within 90 days after the date of this proclamation, the Secretary shall establish a process for including additional derivative steel articles within the scope of the ad valorem duties proclaimed in Proclamation 9705, Proclamation 9980, and clause 4 of this proclamation. In addition to inclusions made by the Secretary, this process shall provide for including additional derivative steel articles at the request of a producer of a steel article or derivative steel article, or an industry association representing one or more such producers, where the request establishes that imports of a derivative steel article have increased in a manner that threatens to impair the national security or otherwise undermine the objectives set forth in the Secretary's January 11, 2018, report or any Proclamation issued pursuant thereto. When the Secretary receives such a request from a domestic producer or industry association, the Secretary shall issue a determination regarding whether or not to include the derivative steel article or articles within 60 days of receiving the request.

(7) The provisions of clause 3 of Proclamation 9705, clause 1 of Proclamation 9777, clause 2 of Proclamation 9980, or any other provisions authorizing the Secretary to grant relief for certain products from the additional ad valorem duties or quantitative restrictions set forth in prior proclamations are hereby revoked. As of 11:59 p.m. eastern time on the date of this proclamation, the Secretary shall not consider any product exclusion requests or renew any product exclusion requests in effect as of that date. The Secretary shall take all necessary action to rescind the product exclusion process, including publication in the *Federal Register*. Granted product exclusions shall remain effective until their expiration date or until excluded product volume is imported, whichever occurs first. The Secretary shall terminate all existing general approved exclusions as of March 12, 2025.

(8) The modifications made by this proclamation in clause 4 shall be effective upon public notification by the Secretary of Commerce, that adequate systems are in place to fully, efficiently, and expediently process and collect tariff revenue for covered articles.

(9) Any steel article or derivative article, except those eligible for admission under ''domestic status'' as defined in 19 CFR 146.43, that is subject to the duty imposed by this proclamation and that is admitted into a U.S. foreign trade zone on or after 12:01 a.m. eastern daylight time on March 12, 2025, must be admitted as ''privileged foreign status'' as defined in 19 CFR 146.41, and will be subject upon entry for consumption to any ad valorem rates of duty related to the classification under the applicable HTSUS subheading. Any steel article or derivative steel article, except those eligible for admission under ''domestic status'' as defined in 19 CFR 146.43, that is subject to the duty imposed by this proclamation, and that was admitted into a U.S. foreign trade zone under ''privileged

foreign status'' as defined in 19 CFR 146.41, prior to 12:01 a.m. eastern daylight time on March 12, 2025, will likewise be subject upon entry for consumption to any ad valorem rates of duty related to the classification under the applicable HTSUS subheading added by this proclamation. Pursuant to clause 8, the duties on steel derivatives established by clause 4 of this Proclamation shall be suspended until public notification by the Secretary of Commerce that adequate systems are in place to fully, efficiently, and expediently process and collect tariff revenue applicable to covered articles.

(10) Any product listed in Annex I to this proclamation or any subsequent annex published in the *Federal Register* pursuant to this Proclamation, that is subject to the additional duties imposed by this proclamation, and that is admitted into a U.S. foreign trade zone, except any product that is eligible for admission under ''domestic status'' as defined in 19 CFR 146.43, may only be admitted as ''privileged foreign status,'' as defined in 19 CFR 146.41, effective as of the date that the additional duties are imposed.

(11) The Secretary, in consultation with the Commissioner of CBP, Security, and the heads of other relevant executive departments and agencies, shall revise the HTSUS so that it conforms to the amendments and effective dates directed in this proclamation within ten days of March 12, 2025. The Secretary is authorized and directed to publish any such modification and future modifications to the HTSUS in the *Federal Register*.

(12) CBP shall prioritize reviews of the classification of imported steel articles and derivative steel articles and, in the event that it discovers misclassification resulting in non-payment of the ad valorem duties proclaimed herein, it shall assess monetary penalties in the maximum amount permitted by law and shall not consider any evidence of mitigating factors in its determination. In addition, CBP shall promptly notify the Secretary regarding evidence of any efforts to evade payment of the ad valorem duties proclaimed herein through processing or alteration of steel articles or derivative steel articles prior to importation. In such circumstances, the Secretary shall consider the processed or altered steel articles or derivative steel articles for inclusion as derivative steel articles pursuant to clause 5 of this proclamation.

(13) No drawback shall be available with respect to the duties imposed pursuant to this proclamation.

(14) The Secretary may issue regulations and guidance consistent with this proclamation, including to address operational necessity.

(15) Any provision of a previous proclamation or Executive Order that is inconsistent with the actions taken in this proclamation is superseded to the extent of such inconsistency.

IN WITNESS WHEREOF, I have hereunto set my hand this tenth day of February, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and forty-ninth.

Billing code 3395–F4–P

Annex I

Consistent with clause (4) of this Proclamation, the following derivative steel articles shall be subject to the ad valorem duties proclaimed in Proclamation 9705, Proclamation 9777, and Proclamation 9980, as amended, except for derivative steel articles processed in another country from steel articles that were melted and poured in the United States. For any derivative steel article below or any derivative steel article set forth in a subsequent Federal Register notice that is not in Chapter 73 of the HTSUS, the additional ad valorem duty shall apply only to the steel content of the derivative article.

The Secretary of Commerce is authorized and directed to publish a notice in the Federal Register to this effect, shall determine the modifications necessary to the HTSUS to effectuate the objectives of this order consistent with law, and shall make such modifications to the HTSUS through notice in the Federal Register. The modifications made to the HTSUS by this notice shall be effective with respect to goods entered for consumption, or withdrawn from warehouse for consumption, as of the effective date of this proclamation, in accordance with clause (8) of this Proclamation.

**HTS Number**

| | | |
|---|---|---|
| 7301.20.10 | 7307.92.30 | 7308.40.00 |
| 7301.20.50 | 7307.92.90 | 7308.90.30 |
| 7302.30.00 | 7307.93.30 | 7308.90.60 |
| 7307.21.10 | 7307.93.60 | 7308.90.70 |
| 7307.21.50 | 7307.93.90 | 7308.90.95 |
| 7307.22.10 | 7307.99.10 | 7309.00.00 |
| 7307.22.50 | 7307.99.30 | 7310.10.00 |
| 7307.23.00 | 7307.99.50 | 7310.21.00 |
| 7307.29.00 | 7308.10.00 | 7310.29.00 |
| 7307.91.10 | 7308.20.00 | 7311.00.00 |
| 7307.91.30 | 7308.30.10 | 7312.10.05 |
| 7307.91.50 | 7308.30.50 | 7312.10.10 |

| | | |
|---|---|---|
| 7312.10.20 | 7315.20.50 | 7318.29.00 |
| 7312.10.30 | 7315.81.00 | 7319.40.20 |
| 7312.10.50 | 7315.82.10 | 7319.40.30 |
| 7312.10.60 | 7315.82.30 | 7319.40.50 |
| 7312.10.70 | 7315.82.50 | 7319.90.10 |
| 7312.10.80 | 7315.82.70 | 7319.90.90 |
| 7312.10.90 | 7315.89.10 | 7320.10.30 |
| 7312.90.00 | 7315.89.30 | 7320.10.60 |
| 7313.00.00 | 7315.89.50 | 7320.10.90 |
| 7314.12.10 | 7315.90.00 | 7320.20.10 |
| 7314.12.20 | 7316.00.00 | 7320.20.50 |
| 7314.12.30 | 7317.00.10 | 7320.90.10 |
| 7314.12.60 | 7317.00.20 | 7320.90.50 |
| 7314.12.90 | 7317.00.30 | 7321.11.10 |
| 7314.14.10 | 7317.00.55 | 7321.11.30 |
| 7314.14.20 | 7317.00.65 | 7321.11.60 |
| 7314.14.30 | 7317.00.75 | 7321.12.00 |
| 7314.14.60 | 7318.11.00 | 7321.19.00 |
| 7314.14.90 | 7318.12.00 | 7321.81.10 |
| 7314.19.01 | 7318.13.00 | 7321.81.50 |
| 7314.20.00 | 7318.14.10 | 7321.82.10 |
| 7314.31.10 | 7318.14.50 | 7321.82.50 |
| 7314.31.50 | 7318.15.20 | 7321.89.00 |
| 7314.39.00 | 7318.15.40 | 7321.90.10 |
| 7314.41.00 | 7318.15.50 | 7321.90.20 |
| 7314.42.00 | 7318.15.60 | 7321.90.40 |
| 7314.49.30 | 7318.15.80 | 7321.90.50 |
| 7314.49.60 | 7318.16.00 | 7321.90.60 |
| 7314.50.00 | 7318.19.00 | 7322.19.00 |
| 7315.11.00 | 7318.21.00 | 7322.90.00 |
| 7315.12.00 | 7318.22.00 | 7323.10.00 |
| 7315.19.00 | 7318.23.00 | 7323.93.00 |
| 7315.20.10 | 7318.24.00 | 7323.94.00 |

7323.99.10
7323.99.30
7323.99.50
7323.99.70
7323.99.90
7324.10.00
7324.29.00
7324.90.00
7325.91.00
7325.99.10
7325.99.50
7326.11.00
7326.19.00
7326.20.00
7326.90.10
7326.90.25
7326.90.35
7326.90.45
7326.90.60
7326.90.86
8431.31.00
8431.42.00
8431.49.10
8431.49.90
8432.10.00
8432.90.00
8547.90.00
9403.20.00
9405.99.20
9405.99.40
9406.20.00
9406.90.01

[FR Doc. 2025–02833
Filed 2–14–25; 11:15 am]
Billing code 7020–02–C