Monica J. Tranel
TRANEL LAW FIRM, P.C.
401 Washington Street
Missoula, MT  59802
(406) 926-2662
mtranel@tranelfirm.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief and David Mountain Chief,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES OF AMERICA, and, in her official capacity, KRISTI NOEM,<br><br>Defendants. | Cause No. CV 25-26-GF-DLC<br><br><br><br>**OPPOSITION TO MOTION TO TRANSFER (DOC. 18) AND OPPOSITION TO MOTION TO STAY (DOC. 20)** |

Plaintiffs oppose Defendants motion to transfer this case to the Court of International Trade in New York, and oppose the motion to stay.

**I.     SUMMARY**

Plaintiffs, four enrolled members of the Blackfeet Tribe, seek a preliminary injunction on a declaratory judgment action. Plaintiffs ask this Court to declare the

Executive Orders unconstitutional as a violation of the separation of powers and a violation of due process. Congress alone has power to regulate commerce with foreign nations and with the Indian Tribes.

## II.    RELEVANT FACTS

The Complaint asserts three claims for relief:

**Count I:** The Canada Orders are *ultra vires*. Article I Section 8 Clause 3 gives Congress exclusive and plenary authority "to regulate Commerce *with foreign Nations* [..] **and** *with the Indian Tribes*." The question before the Court is one of constitutional authority to act.

**Count II:** The Canada Orders violate Plaintiffs' Fifth Amendment substantive and procedural rights.[1]

**Count III**: The Canada Orders are unconstitutionally vague and violate the Due Process Clause of the Fifth Amendment.

If Plaintiffs prevail, the Court could:

1) Enjoin Executive Orders 14193 and 14257 and Proclamations 10895 and 10896 pending final resolution on the merits; or

---

[1] *Seminole Nation v. United States*, 316 U.S. 286, 299 (1942); Ed Goodman, *Protecting Habitat for Off-Reservation Tribal Hunting and Fishing Rights: Tribal Co-Management as a Reserved Right*, 30 Ent. L. 279,291 (2000).

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**                2

2) Enjoin Executive Orders 14193 and 14257 and Proclamations 10895 and 10896 from going into effect on the ports of entry located on tribal lands, specifically, the Piegan/Carway and Del Bonita ports of entry; or

3) Enjoin Executive Orders 14193 and 14257 and Proclamations 10895 and 10896 from going into effect as to any enrolled tribal member.

The allegations pertaining to jurisdiction must all be taken as true for purposes of this motion.[2] Defendants restate facts in the Plaintiffs' complaint without contesting them. Subject matter is asserted under the Constitution and laws of the United States, 28 U.S.C. § 1331 (federal question), 1337 (regulation of commerce), 1346 (U.S. as defendant), and under 28 U.S.C. § 1362.

The Court's authority to enter a declaratory judgment is uncontested. The Court may enter an Order for preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, the All Writs Act, and the Court's inherent equitable powers to grant injunctive and declaratory relief when the President has no authority to act.[3] This Court has authority to issue the declaratory judgment requested pursuant to 28

---

[2] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), overruled on other grounds by *Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024).
[3] *Indigenous Envtl. Network v. Trump*, 428 F.Supp.3d 296, 307 (D. Mont. 2019), citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935).

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY** 3

U.S.C. § 2201(a). The Court's authority to act under these laws is uncontested.

## III. LEGAL STANDARD

The Ninth Circuit reviews a district court's dismissal for lack of subject matter jurisdiction *de novo*.[4] Underlying factual findings are reviewed for clear error.[5] In a facial attack on jurisdiction, all allegations are taken as true and reasonable inferences drawn in the Plaintiffs' favor.[6]

## IV. ARGUMENT

### A. There is no legal basis to transfer this case.

A transfer question begins with 28 U.S.C. § 1631:

> Whenever a civil action is filed in a court as defined in section 610 of this title […] and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court […] in which the action or appeal could have been brought at the time it was filed or noticed, […].

To transfer this case to the Court of International Trade three elements must be shown: (1) this Court lacks subject matter jurisdiction; (2) the case could have been filed in the Court of International Trade at the time it was filed; and (3) the transfer

---

[4] *S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of Cal.*, 90 F.4th 953, 957 (9th Cir. 2024)
[5] *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 531 (9th Cir. 2019).
[6] *Wolfe, id.*

is in the interest of justice.[7] Defendants' motion only addresses the second element, claiming the CIT has exclusive jurisdiction.

### 1. **This Court has subject matter jurisdiction.**

Plaintiffs filed a declaratory judgment action raising a constitutional challenge to Executive Orders. This Court has held that subject matter lies in this Court over claims and Plaintiffs similar to these.[8] A district court "may review the constitutionality of [an] Executive Order and grant injunctive relief."[9] District Courts have recently enjoined Executive Orders that exceed the President's statutory or constitutional authority.[10]

The Executive Orders are immediately reviewable. As shown by Plaintiffs, the Orders are being implemented, albeit with much confusion. The Plaintiffs are feeling the "effects" in a "concrete way."[11] Plaintiff Jonathan St. Goddard paid over $300 for a replacement tractor tire that cost just over $1,200. Plaintiff Rhonda

---

[7] 28 U.S.C. § 1631, *Azure v. Kirkegard*, Cause No. CV 14-134-BLG-DLC (D. Mont. Oct 10, 2014).
[8] *Indigenous Envtl. Network v. Trump*, 428 F.Supp.3d 296, 307 (D. Mont. 2019).
[9] *CASA, Inc. v. Trump*, 2025 WL 408636, at *1, *4 (D. Md. Feb. 5, 2025).
[10] *Doctors for Am. v. Off. Of Pers. Mgmt.*, 2025 WL 452707, at *10 (D.D.C. Feb. 11, 2025) (TRO to prevent agencies from removing or modifying websites pursuant to executive order); *Jones v. Trump*, 1:25-cv-00401, Dkt. 28 (D.D.C. Feb. 24, 2025) (TRO to prevent implementation of executive order); *Doe v. McHenry*, 1:25- cv-00286, Dkt. 44 (D.D.C. Feb. 18, 2025) (granting preliminary injunction of same order).
[11] *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003).

Mountain Chief is trying to keep her tourism-dependent business alive, and every day that goes by increases the uncertainty for a short season.[12]

The issues raised in this motion are "fit[] … for judicial decision" now.[13] The hardship of "withholding court consideration" until some later date would be immense.[14] Reservations for the season are being cancelled. Employees are being furloughed to unpaid leave. The short farming, construction, and tourist season will be irreversibly lost. This case is not "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all"[15] — the harm is unfolding in real time and increasing by the day.

Because there is no "want" of jurisdiction in this court, the analysis can stop there and the motion denied on that basis. However, if the Court addresses the question of whether the CIT has exclusive jurisdiction, it should answer that question in the negative.

---

[12] Doc. 5.
[13] *Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023); see *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (permitting review where plaintiff's conduct was "arguably proscribed" by law).
[14] *Saline Parents*, 88 F.4th at 306.
[15] *Trump v. New York*, 592 U.S. 125, 131 (2020) (cleaned up).

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**  6

## 2. The Court of International Trade does not have jurisdiction.

### a. 28 USC Section 1581(i) does not grant jurisdiction here.

In the Customs Courts Act of 1980, Congress delineated the jurisdiction of the Court of International Trade over civil actions brought against the United States. Subsections (a)–(h) grant the Court jurisdiction over specific causes of action; subsection (i) contains a grant of residual jurisdiction.[16]

Defendants ask the Court to transfer to the CIT to exercise jurisdiction according to 28 U.S.C. § 1581(i)(1)(B) and (D) but do not discuss the fact that Subsection (i)(3) of § 1581 specifically precludes jurisdiction in this case:

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for ... embargoes or other quantitative restrictions on the importation of merchandise *for reasons other than the protection of the public health or safety*.[17]

The Executive Orders challenged by the Plaintiffs are explicitly predicated on a national emergency and invoke the public safety.

Executive Order 14193 invokes an emergency based on fentanyl and the "public health crisis" it claims will be addressed by the tariffs.[18] The first

---

[16] *Jaramillo Spices Corp. v. United States*, 531 F.Supp.3d 1354, 1359 (Ct. Int'l Trade 2021), 28 U.S.C. § 1581.
[17] 28 U.S.C. § 1581(i)(3) (emphasis added).
[18] Doc. 9-9, Exhibit 4, Executive Order 14193.

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**     7

paragraph asserts that there is a sustained influx of drugs "endangering lives and putting a severe strain on our healthcare system, public service, and communities." The Order notes the emergency is increasing despite dialogue "on the public health impacts of illicit drugs.[..]" The final justification under the introduction of Executive Order 14193 states:

> Immediate action is required to finally end **this public health crisis and national emergency**, which will not happen unless the compliance and cooperation of Canada is assured.

Section 1 discusses the public health crisis of deaths from the drug crisis. Section 3(a) scolds Canada for failing to take adequate steps to alleviate the public health crisis.

The introduction to Executive Order 14257 states explicitly that it is justified based on "national public health or safety, or any combination of those matters, or any combination of those matters." The Executive Order justifies sweeping and global tariffs based on current trade deficits, some of which "unnecessarily restrict trade without furthering safety objectives." Introduction Section of Executive Order 14257.[19]

Proclamations 10895 and 10896 state in Sections 14 that existing arrangements have not addressed Canada's "threatened impairment to national

---

[19] Doc. 9-12, Exhibit 14, Executive Order 14257.

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**     8

security."[20] The CIT lacks jurisdiction over this case according to the plain language of 28 U.S.C. § 1581(i).[21]

Defendants cite *K-Mart Corporation v. Cartier* as support for its claim that the CIT has exclusive jurisdiction. In *K-Mart Corporation* the U.S. Supreme Court found that the District Court would be divested of jurisdiction *only if* the action fell within one of several specific grants of exclusive jurisdiction to the Court of International Trade.[22] That is not the situation here and it was not the situation in *K-Mart*, where the Court rejected Petitioners claims that the CIT had exclusive jurisdiction simply because there was a tangential reference to embargoes.

Defense cites *Conoco v. U.S. Foreign-Trade* as further authority. In *Conoco* the government argued that the CIT did not have jurisdiction to review certain orders of the Foreign Trade Zones Board (Board or FTZB).[23] In finding against the government, the Court noted that the *K-Mart* decision held that the term "embargoes" did not give the CIT jurisdiction over gray-market goods. The Defense does not apprise this Court of that holding, or that *K-Mart* is actually authority for this Court to retain jurisdiction.

---

[20] Doc. 9-2 Exhibit 7 Proclamation 10895; Doc. 9-3 Exhibit 8 Proclamation 10896.
[21] *Jaramillo Spices Corp. v. United States*, 531 F.Supp.3d 1354 (CIT 2021).
[22] *K-Mart Corporation v. Cartier, Inc 47Th Street Photo, Inc v. Coalition To Preserve the Integrity of American Trademarks*, 485 U.S. 176, 182 – 183 (1988).
[23] *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581 (Fed. Cir. 1994).

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**  9

The *Conoco* decision applies here in one compelling way. In *Conoco* the Court was tired of the government's jurisdictional game:

> This Court feels compelled to express its sense of exasperation and frustration with the results of this case. Individuals and firms are often required to expend an inordinate amount of time and money to obtain judicial review in this Court. They are required to navigate arcane jurisdictional passages. They waste time and resources fighting over jurisdiction and oftentimes they are denied a chance to be heard on the merits of the case. These obstacles unnecessarily increase cost and hurt the efforts of the United States to be competitive in the international community.[24]

Courts have interpreted §1581(i) as a residual jurisdictional provision, not a broad grant of preemption to any case that mentions the word trade or tariff. The clear authority is that this Court has jurisdiction. The Defendants have not claimed otherwise. The argument is that the CIT has "better" jurisdiction, but no authority has been presented to justify that.

Courts have declined to find exclusive CIT jurisdiction under § 1581(i) when alternative and adequate remedies are available in other federal courts. There is clear jurisdiction in this Court to redress the Plaintiffs' grievances. The case should stay put.

---

[24] *Conoco*, 18 F.3d 1581, 1590 (Fed. Cir. 1994).

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**   10

### b. IEEPA doesn't mention tariffs.

The Defense claims that the §1581(i)(1)(B) confers exclusive jurisdiction over a civil action challenging any law providing for tariffs. But the government doesn't cite the language of IEEPA that provides for tariffs. It can't. IEEPA doesn't provide for tariffs.

The cases the Defense cites in support of a transfer are all under statutory provisions other than IEEPA. That is not surprising – IEEPA does not grant tariff authority at all. The words "duty" and "tariff" do not appear in the statute.[25]

The Defense cites Section 232 challenges; *U.S. Shoe Corp* (challenges to a harbor maintenance tax identified as a jurisdictional grant under §1581(i)), and *Totes-Isotoner*, a case challenging specific provisions of the tariff schedule (clearly a tariff case). Those cases arose under specific tariff provisions; unlike IEEPA, which has never been used to impose tariffs. The words "tariff' or "duty" do not appear in IEEPA. In contrast, other laws clearly delegate tariff authority (Section 301, specifically authorizing "duties" to respond to unjustifiable acts that burden U.S. commerce; Section 201, permitting "duties" or "tariff-rate quotas" to respond to a surge in imports that seriously injures a U.S. industry). The Executive Orders

---

[25] 50 U.S.C Section 1701 *et seq*.
**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**     11

rely on IEEPA. IEEPA does not grant tariff authority; nor does it allow the executive to apply it in such a wild and unpredictable way.

Congress enacted IEEPA nearly 50 years ago to give the president the power to act promptly to protect the nation's security. IEEPA does not give the executive a blank check on trade policy. The president has numerous tariff avenues available to respond to a true national emergency. They were not used; IEEPA was, and IEEPA is not a jurisdictional basis for the CIT to kick every other federal court to the curb on every constitutional claim raised.

### 3. Public interest requires the case stay in the Plaintiffs' home.

Plaintiffs come to this court for relief as citizens of the United States, and uniquely, as enrolled members of the Blackfeet Tribe. They live here. Their historic homelands are here. Part of the relief requested is unique to Montana.

The harm is happening here. Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief, and David Mountain Chief are people – not multinational corporate importers and exporters versed in the code of trade language where relief is granted based on complex legal and accounting mechanisms. The rights they seek to vindicate are granted by the Constitution, not a trade statute.

Defendants assertion of jurisdiction in a Court in New York would require enrolled tribal members of the Blackfeet Nation, a federally recognized Tribe, filing in the court located in their historical homelands in Montana, to travel

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**  12

thousands of miles to New York to seek a remedy for constitutional harms. That makes no sense. It would be prohibitive for them to seek and obtain redress in the CIT. The interests of justice require the case to remain here, where it was filed, where subject matter jurisdiction lies, and where the Plaintiffs live and work.

## B. The Defendants remaining arguments are not availing.

Defendants' argue that the CIT handles lots of trade cases and has the expertise needed, citing a string of cases that do not mention IEEPA.

The question before the Court is whether the Article II branch of government has unilateral power to impose sweeping universal tariffs on every country in the world other than Russia and North Korea.

In issuing the Canada Orders, the executive chose to bypass Congress. Instead of relying on the "Customs Duties" Title, U.S. Code Title 19, the Orders rely on "War and National Defense," U.S. Code Title 50, IEEPA.[26] The trade statutes under which tariffs could legitimately be imposed require the Executive Branch to follow specific procedures before imposing a tariff. When tariffs were imposed on steel and aluminum under Section 232 of the Trade Expansion Act

---

[26] 50 U.S.C. §§ 1701–1706.

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**  13

(National Security Provision) the Administration invoked national security. The procedures for the steel and aluminum tariffs took eleven months.[27]

Section 301 of the Trade Act of 1974[28] requires the U.S. Trade Representative to follow a multi-step process: Publish a Federal Register request for public comment on the proposed tariffs; conduct a factual investigation into trade practices; conduct a public hearing; then issue a detailed report. To meet the statutory requirements for a tariff, the report must contain factual findings and critically is subject to public input and comment.

None of that happened here. The Canada Orders were fired off under a power grab of stunning scope, claiming power given only to Congress.

Defendants argue that §1581(i)(1)(D) is a source of residual jurisdiction. That depends on two steps:

1) the court must determine whether jurisdiction under a different subsection of § 1581 could have been available; and if so,

2) whether the provided remedy would have been manifestly inadequate.[29]

---

[27] U.S. Department of Commerce, *Section 232 Investigation on the Effect of Imports of Steel on U.S. National Security* (Mar, 18, 2018), https://www.commerce.gov/issues/trade-enforcement/section-232-steel.
[28] 19 U.S.C. § 2411-2420.
[29] *D. Irving, Ltd. v. United States*, 119 F.4th 48 (Fed. Cir. 2024), citing *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019)

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**  14

Step 1 requires the Court to determine the true nature of the action. The true nature of the action before the Court is a separation of powers challenge and a due process claim based on the particular constitutional rights of the Plaintiffs as tribal members. The allegations brought are clearly within this Court's jurisdiction. The claimed harm is that the executive orders and the erratic, universal and sweeping nature of how they are being imposed, is wreaking havoc on border communities and tribal members and businesses, and must be enjoined.

Step 2 of the analysis under provides that residual jurisdiction is only available if there is no jurisdiction under A – C or if the remedies provided there are manifestly inadequate. Defendants claim jurisdiction only under 28 USC § 1581(i)(1)(B), which authorizes jurisdiction over cases arising out of any law providing for "tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of revenue." As discussed, IEEPA does not provide for tariffs. The Orders rely on IEEPA. IEEPA does not apply to sub (B).

In addition, § 1581(i)(1)(B) excludes tariffs intended to raise revenue. The Administration's own statements give up the ghost:

- "You're going to see billions of dollars, even trillions of dollars coming into our country very soon in the form of tariffs."[30]

---

[30] https://rollcall.com/factbase/trump/transcript/donald-trump-remarks-ambassador-oval-office-march-25-2025/#210 (last visited April 11, 2025)

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**   15

- Trade Administration advisor Peter Navarro said the tariffs will bring in $6 trillion in revenue.[31]

- The president claimed the tariffs are raising $2 billion per day.[32]

- Secretary Rollins: the point is to raise revenue and the goal is free trade.[33]

The Administration's own words belie an assertion of jurisdiction under 28 USC § 1581(i)(1)(B).

Finally, although Defendants do not address 28 USC § 1581(i)(1)(C), it explicitly excludes the protection of public health or safety from the grant of exclusive jurisdiction. The Canada Orders rest entirely on a claim of public health and safety and national security for their legitimacy.

28 U.S.C. § 1581(i)(1)(D) applies to "administration and enforcement with respect to the matters referred to" in § 1581(1)(A - C). None of those provisions apply, so the catch all of (D) does not apply.[34]

---

[31] https://www.cnn.com/2025/03/31/economy/tariffs-largest-tax-hike/index.html (last visited April 11, 2025)

[32] https://www.financialexpress.com/world-news/trump-claims-2-billion-daily-in-tariff-revenue-treasury-data-tells-a-different-story/3803630/ (last visited April 14, 2025).

[33] https://www.breitbart.com/clips/2025/04/08/agriculture-secy-tariffs-both-to-raise-revenue-and-get-other-countries-to-lower-tariffs-free-trade-perhaps-the-goal/ (last visited April 11, 2025).

[34] *Parkdale Int'l Ltd. v. United States (Parkdale I)*, 491 F. Supp. 2d 1262, 1267 (Ct. Int'l Trade 2007) (citing *United States v. UniRoyal, Inc.*, 687 F.2d 467, 475 (C.C.P.A. 1982) (Nies, J., concurring)

**PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND OPPOSITION TO MOTION TO STAY**

16

Section 1528(i) is not intended to be used as a sleight of hand to deprive a district court of jurisdiction only to kick a plaintiff out entirely.[35] In fact, had Plaintiffs brought their suit in the CIT under §1528(i), they would now be facing a motion to dismiss for lack of jurisdiction. It is difficult to see anything other than that being the next move. The *Conoco* Court's admonition is well taken here.

The Defense claims that cases involving IEEPA's predecessor statute, TWEA, support a claim of jurisdiction. The cases cited, including *Yoshida*[36] do not support that. In *Yoshida*, the Court found that the "limited nature" of Nixon's tariffs fell within the explicit grant from Congress. IEEPA was passed after *Yoshida* to narrow TWEA. The goal of IEEPA was to convey "upon the President a new set of authorities for use in time of national emergency which are both more limited in scope than those of [TWEA] and subject to procedural limitations."[37]

**C. There is no reason to stay the case.**

The Ninth Circuit evaluates three non-exclusive factors in weighing a discretionary stay:[38] (1) possible damage from a stay; (2) the hardship or inequity a party may suffer in being required to go forward; and (3) the orderly course of

---

[35] *Parkdale Int'l Ltd. v. United States (Parkdale I)*, 491 F. Supp. 2d 1262, 1271.
[36] *United States v. Yoshida Int'l.*, 63 C.C.P.A. 15, 526 F.2d 560 (Cust. Ct. 1975).
[37] See https://www.lawfaremedia.org/article/the-case-against-ieepa-tariffs (last visited April 14, 2025), citing and quoting the House Report accompanying IEEPA.
[38] *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024).

PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER AND
OPPOSITION TO MOTION TO STAY                                              17

justice measured in terms of simplifying or complicating issues, proof, and questions of law."[39]

The party requesting a stay bears the burden of showing it is justified.[40] The Defense never argues that this Court lacks jurisdiction. It's motion to transfer is predicated entirely on the assertion that this case is actually about the cost of zippers and should be in New York at the CIT.

Reading the complaint makes that a tough hill to climb as a matter of fact and law. No legal authority, and no facts, are given to this Court to support a decision that it is without jurisdiction.

Plaintiffs arranged to attend the May 1, 2025 hearing, invested time and resources, and ask the Court to deny the motion and hold the schedule as set.

## V.   CONCLUSION

A declaration of a national emergency is not a talisman to claim total Constitutional power and rewrite tariff schedules. No authority supports an outcome where four members of the Blackfeet Nation must go two thousand miles to assert Constitutional and treaty rights in New York. The motion should be denied and the hearing on May 1 held as scheduled.

---

[39] *Vicious Brands, Inc. v. Face Co.*, 24-cv-04996-LJC (N.D. Cal. Mar 10, 2025), citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).
[40] *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

DATED this 11th day of April, 2025.

                              TRANEL LAW FIRM P.C.

                              *Monica J. Tranel*
                              Monica J. Tranel
                              *Attorneys for Plaintiffs*

Pursuant to MT Rule USDCT L.R. 7.1(d)(2)(E), I certify that the foregoing brief has a word count including footnotes as calculated by Microsoft Word for Mac of less than 4,000 words, excluding the certificate of compliance.

                TRANEL LAW FIRM P.C.

                *Monica J. Tranel*
                Monica J. Tranel
                *Attorneys for Plaintiffs*