LUKE MATHERS
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(212) 264-9236
luke.mathers@usdoj.gov

*Attorney for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| SUSAN WEBBER, JONATHAN ST. GODDARD, RHONDA MOUNTAIN CHIEF, and DAVID MOUNTAIN CHIEF,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM in her official capacity; and THE UNITED STATES OF AMERICA,<br><br>Defendants. | CV 25-26-GF-DLC<br><br><br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER AND MOTION TO STAY** |

Pursuant to Local Rule 7.1(d)(1)(C), defendants, the U.S. Department of

Homeland Security, Kristi Noem, in her official capacity as Secretary of the

Department of Homeland Security, and the United States of America, respectfully

1

submit this reply in support of defendants' motion to transfer (ECF No. 18) and motion to stay (ECF No. 20).

Plaintiffs believe their case belongs in this Court because federal district courts have reviewed the implementation of executive orders for their lawfulness and granted injunctive relief. But they ignore or misunderstand the Court of International Trade's specialized nature and the fact that that court may also review the implementation of executive orders in cases within its jurisdiction. They also fail to distinguish the overwhelming precedent supporting transfer to that court when a case touches upon international trade or customs matters. Most critically, they ignore Ninth Circuit precedent holding that the Court of International Trade has exclusive jurisdiction over a challenge to tariffs imposed under a statute with identical operative language to the International Emergency Economic Powers Act (IEEPA), as well as Federal Circuit precedent holding that tariffs imposed under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, must be heard in the Court of International Trade. If any doubt remains, the Court of International Trade, which has all the same equitable powers as a district court, should decide the scope of its jurisdiction—not this Court. Plaintiffs' party-convenience arguments fare no better. The Court of International Trade is among a handful of "National Courts," all of which have nationwide jurisdiction. These courts also have the authority to sit anywhere in the country. For these reasons,

2

defendants respectfully request that the Court transfer this action to the Court of International Trade.

## ARGUMENT

### I. The Court Of International Trade Has Exclusive Jurisdiction To Entertain Cases Involving Tariffs, Including This Case

Plaintiffs rely on the general grant of federal question jurisdiction in 28 U.S.C. § 1331 to contend that this Court must be able to hear the case, but they ignore 28 U.S.C. § 1337, which divests this Court of jurisdiction for "any matter within the exclusive jurisdiction of the Court of International Trade," and binding Supreme Court precedent holding that, when one of the "grants of exclusive jurisdiction to the Court of International Trade" applies, all other district courts are "divested of jurisdiction" over the action. *K Mart Corp. v. Cartier, Inc*., 485 U.S. 176, 182–83 (1988). Whether a matter falls within the exclusive jurisdiction of the Court of International Trade is governed by 28 U.S.C. § 1581. That statute gives the Court exclusive jurisdiction over laws providing for tariffs and also over administration and enforcement with respect to tariffs. 28 U.S.C. § 1581(i).

At the outset, plaintiffs have no response to defendants' argument that the Court of International Trade has exclusive jurisdiction over tariffs imposed under Section 232, like some of the tariffs at issue here. Not only have the Court of International Trade and the Federal Circuit entertained countless challenges to determinations made under Section 232, Amended Compl. at 3 (ECF No. 15), but

the Federal Circuit has held that a challenge to an imposition of tariffs under Section 232 is "clearly cover[ed]" by the Court of International Trade's exclusive jurisdiction provisions discussed above. *Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1318 n.5 (Fed. Cir. 2021) (citing 28 U.S.C. § 1581(i)). Plaintiffs fail to address this point in their response, even though it is independently sufficient for a transfer.

Instead of addressing Section 232, plaintiffs largely focus on whether the Court of International Trade has jurisdiction over tariffs imposed under IEEPA. That argument fails, too, under binding circuit precedent. As defendants' motion to transfer pointed out (and plaintiffs again fail to address), the Ninth Circuit has held that a challenge to the imposition of tariffs under IEEPA's predecessor statute, the Trading with the Enemy Act (TWEA), belonged at the Customs Court, the Court of International Trade's predecessor. *See Cornet Stores v. Morton*, 632 F.2d 96, 99–100 (9th Cir. 1980) (affirming district court's decision that claim seeking recovery of duties paid pursuant to order authorized under TWEA fell within exclusive jurisdiction of the Customs Court). TWEA and IEEPA have *materially identical* operative language allowing the President to impose tariffs: the authority to "regulate . . . importation." *Compare* 50 U.S.C. § 5(b)(1)(B) *with* 50 U.S.C. § 1701(a). If that language in TWEA meant that the Court of International Trade

had exclusive jurisdiction, it means the same thing here. *Cornet* resolves this motion.

Tellingly, in a separate case brought in the Customs Court, the Court of Customs and Patent Appeals (the predecessor to the Federal Circuit) exercised its jurisdiction to uphold President Nixon's authority to impose tariffs under TWEA. *United States v. Yoshida Int'l*, 526 F.2d 560 (C.C.P.A. 1975). So has the Federal Circuit. *Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*, 693 F.2d 1089 (Fed. Cir. 1982). Under plaintiffs' argument, the Ninth Circuit was wrong in *Cornet*, the Court of Customs and Patent Appeals was wrong in *Yoshida*, and the Federal Circuit was wrong in *Alcan* to conclude that the specialized trade court created by Congress has exclusive jurisdiction over these matters. That these courts all got it wrong is especially doubtful because Congress later *expanded* the scope of the Court of International Trade's jurisdiction when adopting § 1581(i). *See Earth Island Inst. v. Christopher*, 6 F.3d 648, 651 (9th Cir. 1993) ("Section 1581(i) of the 1980 Act also expanded the jurisdiction of the CIT beyond that of the earlier Customs Court."). Moreover, plaintiffs' argument would also mean that the Court of International Trade is currently exceeding its jurisdiction by entertaining two existing challenges to the imposition of tariffs under IEEPA. *See Barnes v. United States*, Case No. 25-00043 (Ct. Int'l Trade); *V.O.S. Selections, Inc. v. Trump*, Case No. 25-00066 (Ct. Int'l Trade).

Plaintiffs attempt to distinguish *Yoshida*, arguing that IEEPA narrowed TWEA's grant of authority such that IEEPA does not afford the President the power to impose tariffs. Pl. Resp. (ECF No. 22) at 17. But that question goes to the merits of plaintiffs' case. The Court need not and should not answer it in deciding whether to transfer the case. When it comes to jurisdiction, the Court is bound by Ninth Circuit precedent holding that the Court of International Trade has exclusive jurisdiction over the permissibility of tariffs imposed under a statute with the operative phrase "regulate … importation." *Cornet*, 632 F.2d at 99–100.[1]

In any event, the Court of International Trade's exclusive jurisdiction over laws "providing for . . . tariffs," 28 U.S.C. § 1581(i)(1)(A), is not tightly confined to laws that refer explicitly to tariffs. In context, the phrase "providing for" means "relating to" or "dealing with." *K Mart*, 485 U.S. at 188; *see also In re Gregory*, 705 F.2d 1118, 1122 (9th Cir. 1983) (construing "provide for" to mean "make a provision for," "deal with," or "refer to"); *cf. Bedrosian v. IRS*, 912 F.3d 144, 150 (3d Cir. 2018) (interpreting the language "providing for internal revenue" "broadly"). The challenged action here—the imposition of tariffs under IEEPA and Section 232—clearly "relates to," or "provides for," tariffs. Moreover,

---

[1] If the Court concludes that it must decide this merits question about the scope of the power conferred on the President by IEEPA in order to determine its jurisdiction, it should defer resolution of the motion to transfer until defendants have had the opportunity to brief those underlying merits questions, beginning with their opposition to plaintiffs' motion for a preliminary injunction.

6

Congress vested the Court of International Trade with jurisdiction over the "administration and enforcement *with respect to*" "tariffs," further evidencing that the jurisdictional grant of the Court of International Trade is broad enough to comfortably include the issues raised by the plaintiffs in this case. 28 U.S.C. § 1581(i)(1)(D) (emphasis added).

History backs this up. In giving the Court of International Trade exclusive jurisdiction over certain trade matters, Congress intended the court to have a "broad jurisdictional grant" "to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the district courts and the Court of International Trade" and "to eliminate much of the difficulty experienced by international trade litigants who in the past commenced suits in the district courts only to have those suits dismissed for want of subject matter jurisdiction." H.R. Rep. No. 96-1235 at 47 (1980). Plaintiffs' argument would sow the very confusion Congress tried to avoid.

What text and history suggest, purpose confirms. Congress, with the Court of International Trade, consolidated this area of law "in one place . . . with an already developed expertise in international trade and tariff matters," thus ensuring a "degree of uniformity and consistency." *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1586 (Fed. Cir. 1994); ECF No. 19 at 19–20. Plaintiffs' argument would do the opposite. Regardless, "conflicts between exclusive

Customs Court [or the Court of International Trade] jurisdiction and the broad jurisdiction of the district courts should be resolved by upholding the exclusivity of the Customs Court jurisdiction." *Earth Island Inst.*, 6 F.3d at 652 (cleaned up); *accord United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 (9th Cir. 2004).

Last, at a minimum, the Court of International Trade, not this Court, should resolve any threshold questions about its jurisdiction. Whether this particular case concerns a law providing for tariffs or concerns the administration of tariffs is a question *first* for the Court of International Trade, which "has the power to decide its own jurisdiction." *Commodities Exp. Co. v. United States Customs Serv.*, 957 F.2d 223, 226–27 (6th Cir. 1992); *see also Universal Fruits and Vegetables Corp.*, 370 F.3d at 836. Plaintiffs' allegation that the President lacks authority to impose tariffs under IEEPA cannot change this Court's *jurisdictional* analysis because, again, the Court of International Trade has the power to decide its own jurisdiction.

Plaintiffs' other arguments are less developed and no more persuasive. Plaintiffs argue that this Court has jurisdiction because it can generally review executive orders. *See* Pl. Resp. at 5 (citing *Indigenous Envtl. Network v. Trump*, 428 F. Supp. 3d 296, 307 (D. Mont. 2019)). But that argument ignores that the executive orders at issue here provide for the imposition of tariffs—an issue squarely within the exclusive jurisdiction of the Court of International Trade. *See*

28 U.S.C. § 255 (allowing the chief judge of the Court of International Trade to designate a three-judge panel in cases involving executive orders); *N. Am. Foreign Trading Corp. v. United States*, 600 F. Supp. 226, 230 (Ct. Int'l Trade 1984) (upholding validity of executive order causing plaintiff's goods to be classified under provision of the Tariff Schedules of the United States).

Plaintiffs also briefly argue that § 1581(i) does not vest the Court of International Trade with subject-matter jurisdiction because the executive orders at issue are "explicitly predicated on a national emergency and invoke the public safety[,]" and § 1581(i)(1)(C) precludes jurisdiction over "embargoes or other quantitative restrictions" that are based on "the protection of the public health or safety." Pl. Resp. at 7 (quoting 28 U.S.C. § 1581(i)(1)(C)). But plaintiffs focus on the wrong part of the statute. This case involves "tariffs," which fall within the Court of International Trade's jurisdiction under § 1581(i)(1)(B), (D), and not "embargoes and other quantitative restrictions." Section 1581(i)(1)(C) is simply not relevant to this case.

Nor does the perceived purpose for the tariffs otherwise matter for jurisdictional purposes. Pl. Resp. at 15. As explained in defendants' motion to transfer, the Court of International Trade has exclusive jurisdiction over actions challenging any tariffs—no matter whether those tariffs provide "revenue from imports" or were imposed "for reasons other than the raising of revenue[.]" ECF

No. 19 at 18 (quoting 28 U.S.C. § 1581(i)(1)(A), (B)). And neither of these subparagraphs carves out an exception for tariffs motivated in some part by public health or safety. Plaintiffs simply misread § 1581(i).

## II. Plaintiffs' Convenience Is Irrelevant To The Court's Subject-Matter Jurisdiction

Plaintiffs ask the Court to exercise jurisdiction over the case because it would be onerous for them to travel to New York and the "[p]ublic interest requires the case to stay in" Montana. Pl. Resp. at 12-13. But the public interest and burdens of litigation are irrelevant to whether the Court has subject-matter jurisdiction over the case.

Regardless, the Court of International Trade has tools to address any hardships plaintiffs might face. It can sit anywhere within the country, including Montana. *See* 28 U.S.C. § 256(a); Court of International Trade Rule 77(c)(2). And it has held remote hearings when necessary. *See, e.g.*, *SGS Sports Inc. v. United States*, 620 F. Supp. 3d 1365, 1370 (Ct. Int'l Trade 2023) (noting that the court "heard testimony via videoconference" at a bench trial). Plaintiffs' concerns about travel to New York are misplaced and lack relevance to the Court's jurisdiction.

Ultimately, too, Congress's decision to vest exclusive jurisdiction over tariffs and other matters in a single, nationwide court was designed to serve policy interests of paramount importance. Congress created the Court of International

Trade and its predecessors, as well as the Federal Circuit and other courts of national jurisdiction, to ensure a "degree of uniformity and consistency" for specific statutory matters such as the imposition of tariffs. *Conoco*, 18 F.3d at 1586. Congress designed this system and gave the Court of International Trade nationwide jurisdiction (28 U.S.C. § 256(a); Court of International Trade Rule 77(c)(2)) to *prevent* different tariffs from being in effect in different areas of the country and any resulting economic uncertainty. *See Commodities Exp.*, 957 F.2d at 226–27 (Congress, in creating the Court of International Trade, "increased its remedial powers in order to provide 'a comprehensive system of judicial review of civil actions arising from import transactions,' thereby 'ensur[ing] greater efficiency in judicial resources and uniformity in the judicial decisionmaking process.'" (quoting H.R. Rep. No. 96-1235 at 19 (1980)). Allowing this case to proceed outside the Court of International Trade would flout Congress's design and invite inconsistent results.

Perhaps litigating in Montana would be more convenient for plaintiffs. But even if equitable considerations could have any relevance to the Court's subject-matter jurisdiction, litigating all challenges to the President's tariffs in a single forum with nationwide jurisdiction will obviate the enormous risk for confusion and disruption that would result from consideration by multiple district courts.

## III. A Stay Will Protect The Time And Resources Of Both Parties And The Court

Plaintiffs oppose a stay of the proceedings pending resolution of the motion to transfer because they have "invested time and resources" into this case and have already made plans to attend the scheduled May 1, 2025 hearing. Pl. Resp. at 18. But consideration of the parties' time and resources favors a stay, which will *protect* the time and resources of the parties and the Court. As explained in the stay motion, a stay followed by prompt transfer would "prevent the waste of time, energy and money" spent on litigating in the wrong court, and "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

Plaintiffs do not argue that they would otherwise be prejudiced by a brief pause to permit the Court to rule on the motion to transfer in the first instance. Notably, they do not suggest that there is any urgency requiring briefing on their motion for preliminary and permanent injunctive relief before the Court decides this very quickly briefed motion to transfer. Therefore, the Court should grant defendants' motion to stay this case while it decides the motion to transfer.

## CONCLUSION

For these reasons, defendants respectfully request that the Court transfer this action in its entirety to the Court of International Trade and stay all proceedings pending such transfer.

DATED: April 16, 2025

OF COUNSEL:

ALEXANDER K. HAAS
Director

STEPHEN M. ELLIOTT
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

SOSUN BAE
Senior Trial Counsel
BLAKE W. COWMAN
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch

KURT G. ALME
United States Attorney
MARK S. SMITH
Assistant United States Attorney
2601 2nd Ave N.
Suite 3200
Billings, MT 59101
(406) 657-6101

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Luke Mathers
LUKE MATHERS
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(212) 264-9236
luke.mathers@usdoj.gov
*Attorneys for Defendants*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the undersigned, relying on the word count feature of the word-processing system used to prepare the foregoing brief, certifies that this brief contains 2,641 words.

/s/ Luke Mathers
LUKE MATHERS
