**Jesse A. Laslovich**
LASLOVICH LAW, PLLC
4910 Smallwood Court
Helena, MT 59601
(406) 560-0359
jalaslovich@gmail.com

*Attorneys for Plaintiff-Intervenor Montana Farmers Union*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| SUSAN WEBBER, JONATHAN ST. GODDARD, RHONDA MOUNTAIN CHIEF, DAVID MOUNTAIN CHIEF, and DOES 1-100<br><br>Plaintiffs,<br><br>and<br><br>MONTANA FARMERS UNION,<br><br>Plaintiff-Intervenor<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES OF AMERICA, and, in her official capacity, KRISTI NOEM,<br><br>Defendants. | Cause No. 4:25-cv-00026-DLC<br><br><br><br>**BRIEF IN SUPPORT OF MOTION TO INTERVENE BY MONTANA FARMERS UNION** |

The Montana Farmers Union (MFU) has moved the Court to intervene as a party-plaintiff in the above-captioned action pursuant to Rule 24 of the Federal Rules of Civil Procedure. Specifically, intervention can be done as a matter of right or with permission. F.R.Civ.Pro. 24(a)-(b). MFU qualifies for intervention both as a matter of right and, in the alternative, with permission.

## I. BACKGROUND

Plaintiffs, who are enrolled Blackfeet tribal members, filed an *Amended Complaint* seeking injunctive relief and challenging the constitutional and statutory basis for the President's imposition of tariffs on Canadian imports. Plaintiffs ask the Court to enjoin the President's executive orders relating to the Canadian tariffs, either completely or at the ports of entry that are the historical ports of entry for the tribes. Alternatively, Plaintiffs seek to stay all tariffs imposed under the Canada Orders for tribal members. Because MFU's members are similarly adversely affected by the tariffs, although because MFU's members include non-tribal members not subject to tribal treaties, intervention is necessary. Intervention is also necessary because some of MFU's members are exporters and they are suffering harm due to the retaliatory tariffs Canada has placed on American exports. Plaintiff-Intervenor's proposed Complaint, attached as Exhibit A and incorporated herein, describes these damages in more detail.

//

## II.   INTERVENTION IS WARRANTED

### A.   Standard

Rule 24(a) and (b) of the Federal Rules of Civil Procedure states in part:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> **(b) Permissive Intervention.** On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact.

The Ninth Circuit has "repeatedly instructed that the 'requirements for intervention are [to be] broadly interpreted in favor of intervention." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)). Intervention "serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc).

#### 1.   <u>Intervention as of Right</u>

In the Ninth Circuit, a prospective intervenor must show: (1) its motion is timely; (2) it has a significantly protectable interest relating to ... the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) its interest is inadequately represented by the parties to the action. *Kalbers v. United States*

*Department of Justice*, 22 F.4th 816, 822 (9th Cir. 2021) (internal quotation marks and citation omitted). Each element is addressed in turn.

### a. MFU's motion is timely because this litigation just started.

In the Ninth Circuit, timeliness hinges on "three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the parties; and (3) the reason for and length of the delay.'" *Smith*, 830 F.3d at 854 (quoting *Alisal Water*, 870 F.3d at 921). The Ninth Circuit uses a "nuanced, pragmatic approach" when analyzing whether "the district court has substantively – and substantially – engaged the issues in [the] case." *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997). "Neither the 'stage' of litigation nor the 'length of time that has passed since a suit was filed' is dispositive." *Kalbers v. United States Department of Justice*, 22 F.4th 816, 826 (9th Cir. 2021) quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). Timeliness is assessed by reference to the "crucial date" when a proposed intervenor should have been aware that their interests would not be adequately protected by the existing parties. *Smith* at 854.

This litigation was initiated less than two weeks ago. Plaintiffs' *Complaint* was filed on April 4, 2025, and the Defendant's counsel appeared on April 9, 2025. On April 10, 2025, this Court set a hearing on Plaintiffs' request for a Preliminary Injunction for May 1, 2025. Plaintiffs filed an *Amended Complaint* on

April 11, 2025, and Defendants, as of April 14, 2025, are seeking to transfer this case to the Court of International Trade while staying these proceedings, which Plaintiffs oppose. MFU seeks intervention at the earliest stage of this litigation and is not waiting until the litigation has been fully-developed and jumping in near the end of the litigation, prejudicing both parties. Additionally, MFU seeks to intervene now prior to the preliminary injunction hearing currently set for May 1. There is no reason for a delay because the submission of the intervention motion is being made as soon as MFU became aware that its interests would not be protected by both parties. *Id.*

### b. MFU's members are subject to the same tariffs on imports as Plaintiffs, which is the subject matter of this litigation.

A proposed intervenor "has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (internal quotation marks and citation omitted). Here, the farmers and ranchers who comprise the Montana Farmers Union are just as negatively impacted as the Plaintiffs, except most are not enrolled tribal members. MFU's members seek to protect their interest from unconstitutional and unlawfully-imposed tariffs because "[t]hese tariffs walloping our agricultural community came out of the blue and are incredibly harmful." Schweitzer Dec. para. 6.

*Brief in Support of Motion to Intervene by Montana Farmers Union* 5

MFU's legally protected interest and the Plaintiffs' interests are harmonious. MFU seeks the same relief as Plaintiffs, although many of MFU's members would not obtain the same relief requested by the Plaintiffs due to MFU's members generally not being enrolled tribal members. Degn Dec. para 5. But the Court can and should get to the same result and enjoin the tariffs as applied to everyone (not just enrolled tribal members) based on the claims raised in MFU's proposed Complaint.

The president relies on the International Emergency Economic Powers Act of 1977 (IEEPA), enacted in 1977, which gives the President certain powers, defined in 50 U.S.C. § 1702, to address any threats when the President has declared a national emergency. The President may avail himself of the broad authorities granted to him through the IEEPA if he declares a national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States."[1] A declaration of a national emergency must be confined "to a specific set of circumstances which constitutes a real emergency, and for no other purpose."[2]

But the real national emergency is at the southern border and not the

---

[1] 50 U.S.C. § 1701(a).
[2] H.R. Rep. 95-459 at 10 (1977).

*Brief in Support of Motion to Intervene by Montana Farmers Union* 6

northern border (especially Montana's northern border), as reflected by the Special Agent in Charge for the Drug Enforcement Administration's Rocky Mountain Region, Jonathan Pullen, who publicly stated on April 14, 2025, that Interstate 25 running from Arizona to northern Wyoming "is a direct pipeline [for illicit drug trafficking] right up here to Montana."[3] While some drug trafficking cases come from the northern border, it cannot be disputed that most of the drug trafficking occurring in Montana and this country is due to the Mexican cartels and the southern border. One of the President's first executive orders after his inauguration proves this when he declared a national emergency at the southern border. Proclamation 10886 of January 20, 2025, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8,327 (Jan. 29, 2025). As for the northern border, a review of the variety of executive orders relating to the Canadian tariffs would make a roller coaster rider jealous.

On February 1, 2025, the President imposed a 25% tariff on most Canadian imports because Canada had contributed to the drug trafficking crisis, among other things. Executive Order 14193 of February 1, 2025, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

---

[3] https://www.ktvq.com/news/crime-watch/top-dea-agent-says-montana-is-fentanyl-pipeline

*Brief in Support of Motion to Intervene by Montana Farmers Union* 7

Just two days later, on February 3, 2025, the President paused most of the tariffs until March 4, 2025. Executive Order 14197 of February 3, 2025, Progress on the Situation at Our Northern Border, 90 Fed. Reg. 9,183 (Feb. 10, 2025). On March 6, 2025, the President issued yet another executive order exempting all Canadian goods that qualify for duty-free entry under the United States-Mexico-Canada Agreement from his IEEPA tariffs, which generally means goods that do not originate from North America are subject to the President's tariffs imposed by Executive Order 14193. Executive Order 14231 of March 6, 2025, Amendment to Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 11,785 (Mar. 11, 2025).

On April 2, 2025, the President declared yet another national emergency grounded in trade deficits and impacts on the American economy. Executive Order 14257 of April 2, 2025, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr.7, 2025). Indeed, his executive orders simply have not stopped. Executive Order 14266 of April 9, 2025, Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment; Executive Order 14259 of April 8, 2025, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

His executive order on April 2, 2025, purports to protect the nation's food and agriculture sectors. Executive Order 14257 at 15,044-5. But that is not the experience of the actual people who are farming and ranching in Montana, especially MFU's members. And that is why MFU has a significant protectable interest in this litigation.

Sarah Degn, a member of MFU, has owned and operated Fresh Hopped Farm in Sidney, Montana, for 8 years, although her family has farmed for decades. Degn Dec. paras. 3, 11. Her farming operation has relied on the stability of the trade market and she has conducted years of planning to position her business for success. *Id.* at para. 7. She does not have sufficient reserves to overcome the sudden loss of the soybean, corn, and wheat international markets. *Id.* at para. 8. She fears long-term damage has already occurred and that her trading partners will no seek to do business with her farm again due to the unpredictability of the trade market. *Id.* at para. 9. And to add further pain, the steel and aluminum tariffs are making it nearly impossible to maintain her existing facilities and build new ones. *Id.* at para. 10.

Similarly, for Trent Stoltz, who owns and operates a yearly cattle operation and raises and sells irrigated hay from Pompey's Pillar, Montana, the tariffs are preventing MFU's members and him from locking in cattle prices with the Livestock Revenue Protection (LRP) program. Stoltz Dec. paras. 1, 7. Indeed,

because of the volatility in the cattle markets, they are not writing LRP contracts due to the tariffs. Stoltz Dec. para. 7. Additionally, his fertilizer costs have risen because of the tariffs on potash, which is primarily a group of potassium-rich salts primarily used as fertilizer to replenish potassium in the soil. *Id.* at para. 8. He believes his costs will only continue to increase if the tariffs are not stopped. *Id.* at para. 9.

Ms. Degn and Mr. Stoltz, who are also speaking on behalf of MFU's members, are just two examples of the farmers and ranchers who are suffering harm from the President's tariffs, which is why MFU is seeking to protect its members' significant interests by seeking intervention in this litigation.

### c.   Any disposition of this litigation will impair or impede MFU's interest.

As a proposed intervenor, there is no requirement that MFU must establish its interest will be impaired. Rather, it need only establish that disposition of the action may "impair or impede the ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citing 6 Moore's § 24.03(3)(a), at 24-41).

It the Court only grants relief for enrolled tribal members or finds it legal basis for any relief granted grounded in tribal treaties with the United States, the interests of MFU's members will not be protected. In its Complaint, MFU seeks enjoinment of all tariffs on imports, regardless of whether they are applied to

enrolled tribal members or not, because the President lacks the constitutional and statutory authority to impose them. Unlike the Plaintiffs, moreover, some of MFU's members are negatively impacted while trying to export their goods or crops.

John Wicks, a fourth generation Montana farmer, has suffered monetary losses due to the tariffs because a contract to export organic lentils being negotiated with a Canadian partners were not consummated due to the instability in the trade markets. Wicks Dec. paras 7-8. Specifically, the Canadian partner told Mr. Wicks his organic lentils would not be purchased if the tariffs were imposed. *Id.* at para. 7. Mr. Wicks has also experienced losses in the durum market, which is used for pasta. *Id.* at 10. There is more demand for durum in Canada, but because of the tariffs, the price per bushel has dropped nearly in half and because demand for durum is much less than the United States, the higher prices in the United States do not make up for the losses incurred from Canada. *Id.* The volatility in the trade market and the tariffs themselves have cost Mr. Wicks's farm money, which is not sustainable unless the tariffs are stopped. *Id.* at para. 11. This is also why MFU's interests would be impaired if the Court leaves the tariffs in place or only enjoins them for enrolled tribal members.

**d.     MFU's interest is inadequately represented by the parties.**

Adequacy of representation "is satisfied if the applicant shows that

representation of his interest may be inadequate" – a "minimal" burden. *Legal Aid Soc'y v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1997) (internal quotation marks and citation omitted). MFU's interests are adverse to the Defendants' interests, but not adverse to the Plaintiffs'. The Plaintiffs' status as enrolled tribal members and the necessary corresponding applicability of the nation's tribal treaties, however, may limit the scope of relief the Court may grant to the Plaintiffs. MFU seeks to expand the scope of relief to apply to everyone who is subjected to the tariffs, but MFU's interests are bigger than that due to the involvement of some of their members in exporting to the international market.

MFU's members rely on stability in the trade market and conduct years of planning to position their businesses for success. Degn Dec. para. 7. Since signing his initial executive order regarding Canada, the President has issued five more in a matter of two months – and these are only as it relates to Canadian tariffs. This unpredictability and chaos has led and will continue to lead to "harsh economic penalties on" Montana's farmers and ranchers. Schweitzer Dec. para. 11. This litigation is not necessarily about farmers and ranchers, but they should be a litigant because those who provide food to our nation and the world are negatively impacted by the President's tariffs the most.

Moreover, simply because the Plaintiffs and MFU share the same objective in enjoining the tariffs due to their unconstitutionality and unlawfulness, does not

mean MFU's interests are adequately protected. Here, none of the parties have made arguments about the negative impacts on MFU's members, nor is there any indication that the parties are willing to make that argument on behalf of MFU, which is why MFU meets the "minimal" burden that the parties may not adequately represent its interests during this litigation. *Dunlop*, 618 F.2d at 50.

Having met all four elements to establish intervention as of right, MFU has shown that its motion is justified and should be granted by the Court. If the Court disagrees, in the alternative, the Court should grant MFU permissive intervention for the following reasons.

### 2.     Intervention with Permission

"[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir.2002). Each element is addressed in turn.

#### a.     MFU has independent grounds for jurisdiction.

The Montana Farmers Union has been a true grassroots organization for over a century. Since its inception, MFU has been composed of farmers and ranchers from across Montana who feed our state, nation, and the world. MFU's

members rely on a predictable and stable trade market and the tariffs imposed by the President not only exceed the President's constitutional and statutory authority, they've "wallop[ed]" the agricultural community in Montana, as no one can "plan or prepare." Schweitzer Dec. para. 6. This unpredictability means reduced seeding, using less fertilizer, or selling herds that can no longer be fed. *Id.* Fewer crops will be harvested and there will be a massive reduction in the price of beef. *Id.*

As shown previously, MFU's farmers and ranchers rely on international markets, including Canada, to survive. Because of the President's tariffs, their goods will be more expensive to export, which will result in reduced profits and lost customers. Even worse, farms and ranches that have been in families for generations must be sold simply because the President's isolationist and unlawful approach is incongruous with the international market with which these farmers and ranchers have been dealing and relying upon for decades. These tariffs are already having devasting impacts on MFU's members and have the potential of putting them out of business if the tariffs are not enjoined. MFU's members do not have markets in the United States for the crops they grow and those markets cannot be developed overnight.

The plain language of the IEEPA does not include the power to "tariff" or to "tax." Omission of tariffs is significant given how clearly Congress referenced

tariff authorities in other trade statutes. The IEEPA has been the basis for over 60 Executive Orders. Until now, it has never been used to impose tariffs. This is because there is no legal basis in the IEEPA to impose universal tariffs. The scale and scope of the tariffs is arbitrary, does not identify how it relates to or abates the declared emergency, and has been erratically deployed. The tariffs have been discussed as bargaining chips, bringing jobs to the U.S., and a way to raise revenue to offset tax cuts. Rarely, if at all, have the tariffs been linked to the stated emergencies. The real emergency is the emergency created by the tariffs for MFU's members. And it is this emergency that gives MFU independent grounds establishing federal jurisdiction.

      **b.**    **MFU's motion is timely because this litigation just started.**

To avoid redundancy, MFU adopts and incorporates here the same analysis included on pages 4-5 of this brief arguing that MFU's motion to intervene as of right is timely. MFU's motion is timely under both intervention as of right and permissive intervention.

      **c.**    **MFU has claims that share with the main action a common question of law or fact.**

This element is straightforward, as the Plaintiffs challenge the constitutionality and lawfulness of the tariffs as MFU would, as reflected in MFU's proposed Complaint, seek the same relief from the Court – enjoinment of those tariffs. MFU's members need certainty and stability in the market and while

they seemingly would be able to adjust to tariffs imposed lawfully, they cannot effectively plan when they are subject to the whipsaw of the President and his many executive orders issued where, as here, on one day he imposes tariffs on Canadian imports and merely two days later he pauses them for 90 days. This reckless and damaging approach is not only unsustainable, it is unconstitutional. And because MFU shares these questions of fact and law with this litigation, this element is also established and the Court should grant MFU permissive intervention under F.R.Civ.Pro. 24(b).

### III. CONCLUSION

Based on the foregoing, MFU respectfully requests that the Court allow MFU to intervene as of right or with permission under Rule 24 of the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this 21st day of April, 2025.

LASLOVICH LAW, PLLC

By: *[signature]*

**Jesse A. Laslovich**
Attorneys for Plaintiff-Intervenor
Montana Farmers Union

## **CERTIFICATE OF COMPLIANCE**

Pursuant to District of Montana Local Rule 7.1(d)(2)(E), the undersigned, relying on the word count of a word-processing system used to prepare the brief, certifies that this brief contains 3485 words, excluding the caption, certificate of compliance, and certificate of service.

                        LASLOVICH LAW, PLLC

                        By: /s/ Jesse A. Laslovich

                        **Jesse A. Laslovich**
                        Attorneys for Plaintiff-Intervenor
                        Montana Farmers Union

## CERTIFICATE OF SERVICE

I certify that on the 21st day of April, 2025, I served true and accurate copies of the *Brief in Support of Motion to Intervene by Montana Farmers Union* to counsel for the parties via the emails indicated below:

Monica Tranel, Esq.
Tranel Law Firm, P.C.
401 Washington Street
Missoula, MT 59802
mtranel@tranelfirm.com
Counsel for Plaintiffs

Luke Mathers, Trial Attorney
US Department of Justice
26 Federal Plaza, Room 346
New York, NY 10278
Luke.mathers@usdoj.gov
Counsel for Defendants

                                  LASLOVICH LAW, PLLC

By: *[signature]*

                                  **Jesse A. Laslovich**
                                  Attorneys for Plaintiff-Intervenor
                                  Montana Farmers Union