Monica J. Tranel
TRANEL LAW FIRM, P.C.
401 Washington Street
Missoula, MT  59802
(406) 926-2662
mtranel@tranelfirm.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief and David Mountain Chief, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES OF AMERICA, and, in her official capacity, KRISTI NOEM, <br><br> Defendants. | Cause No. CV 25-26-GF-DLC <br><br> **PLAINTIFFS REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (Doc. 3)** |

## ARGUMENT IN REPLY

Webber, St. Goddard, and the Mountain Chiefs established irreparable harm and a "fair chance of success on the merits."[1] The Canada Orders should be enjoined pending appeal.[2]

---

[1] *Flathead-Lolo-Bitterroot v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024).
[2] F.R.Civ.Pro. 62; FRAP 8(a)(1)(C).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION     1**

I.  **Status quo preserves the last uncontested status.**

Plaintiffs ask the Court to enjoin: Sections 2(a), (b), (d), (f), (g), and (h) of Executive Order 14193 as amended; Section 14 of Proclamations 10896 and 10895; and Sections 2; 3(a), (b), (c), (d), (e) and (f); 4 (a), (b), (c), and (d) of Executive Order 14257 as amended [Canada Orders].

A preliminary injunction pending appeal preserves the status quo.[3] The district court is otherwise divested of jurisdiction.[4] Plaintiffs can meet their burden by showing either: (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips sharply in Plaintiffs favor.[5]

II. **Plaintiffs are suffering irreparable harm.**

Rhonda and David Mountain Chief operate a cab company that depends on tourism. Rhonda's bookings are severely down, as a result of the Executive Orders.[6] Jackie and Stephen Conway own and operate a campground at St. Mary, a few miles south of Canada. Their business depends on tourism during a very short season, beginning when Logan Pass opens and ending in September. Their

---

[3] *Doe v. Noem*, 2:25-cv-01103-DAD-AC (E.D. Cal. Apr 17, 2025); *Textile Unlimited, Inc. v. ABMH & Co.,* 240 F.3d 781, 786 (9th Cir. 2001).
[4] *Nolan v. Salmonsen*, CV 23-18-H-BMM (D. Mont. Mar 13, 2024).
[5] *Native Ecosystems v. Marten*, CV 18-87-M-DLC (2018), *Textile,* 240 F.3d at 786; *LA Mem'l v. NFL*, 634 F.2d 1197, 1201 (9th Cir. 1980).
[6] Second Declaration of Rhonda Mountain Chief.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION    2**

employees depend on the income from the summer season for survival. The Conways had to close during the Covid pandemic, and know they can't make up lost income. Every day matters.[7]

Wayne Smith, a rancher, contracted grain for hauling to Canada. The first loads went fine before the Executive Orders, but the buyer stopped hauling because of the tariffs. 25% tariffs were imposed on a load Smith had hauled after April 2, a $1,375 cost on a $5,500 load. Smith is forced to change what he plants, which harms rotational crops and damages long-term operations.[8]

Jonathan St. Goddard was randomly forced to pay a tariff on a replacement tractor wheel.[9] The Mountain Chief cab company and St. Mary campground rely on tourism.[10] The loss hurts their businesses, and because a portion of their revenue goes to the Blackfeet Tribe to operate the Blackfeet government, it hurts the entire community. These lost revenues, happening as a result of the tariffs, harm their family businesses and can't be made up.[11]

Plaintiffs' "non-speculative loss of substantial funding" to family businesses and farm and ranch operations is irreparable harm.[12] The "loss of opportunity to

---

[7] Stephen and Jackie Dee Conway Declarations.
[8] Declaration of Smith.
[9] Doc. 1-2, JSG Declaration; Exhibit 1 (Tractor Salvage Invoice), Exhibit 2 (Tariff Receipt).
[10] Updated David Mountain Chief Declaration.
[11] Doc. 1-1, Webber Declaration.
[12] *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION   3**

pursue [a] chosen profession[] constitutes irreparable harm."[13] The "deprivation of constitutional rights unquestionably constitutes irreparable injury."[14]

## III. Plaintiffs have a fair chance of success.

### A. Congress regulates commerce.

This is a constitutional challenge. Congress has exclusive, plenary authority "to regulate Commerce *with foreign Nations* [..] **and** *with the Indian Tribes*."[15] The Canada Orders violate both clauses. An unbroken line of cases has held commerce with the Indian Tribes to be in Congress' constitutional ambit, not the President's.

#### *1. IEEPA does not include tariffs.*

Rather than addressing the constitutional challenge the government focuses on a textual argument about IEEPA, claiming that "regulate" means "tax" or "tariff."

The government's position leads to absurdity: the Securities Act of 1934 authorizes the government to "regulate" the trading of securities; by the government's logic, the SEC can tax stock. Over a thousand references give agencies the power to regulate. The government's interpretation gives each of those references a hidden taxing power.

---

[13] *Arizona Dream v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).
[14] *W.B. v. Noem*, 25-cv-03407-EMC (N.D. Cal. Apr 23, 2025); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), *Elrod v. Burns*, 427 U.S. 347, 373 (1976).
[15] U.S. Constitution Article I Section 8 Clause 3.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION    4**

In the cases the government cites, "regulate" refers to *Congress* imposing taxes under the Commerce Clause.[16] No case supports reading "tax" into the word "regulate" each time Congress delegates the power to regulate.[17]

Congress's commerce power is exclusive.[18] In *Pulsifer*: "our cases begin (and often end) with the presumption that Congress is careful in all its word choices."[19] Congress was careful with its words in IEEPA. It knew how TWEA was being used, and it intentionally did not include "tariff" or "tax" in IEEPA.

Enacted in 1917 during World War I, Trading with the Enemies Act (TWEA) applied during declared war.[20] In 1971, during Vietnam, Nixon imposed temporary 10% tariffs – within the range **set by Congress** – citing TWEA as support. In 1975 the tariffs were upheld as within authorized range.[21]

Congress passed IEEPA in 1977 to limit the overreach of presidential power under TWEA by making such powers subject to the National Emergencies Act (NEA). In IEEPA, Congress granted specific powers.[22] The omission of "tariffs" is

---

[16] *Alcan Sales, Div. of Alcan Aluminum Corp. v. U.S.*, 693 F.2d 1089 (Fed. Cir. 1982); *U.S. v. Spawr Optical Research, Inc.*, 685 F.2d 1076, 1081 (9th Cir. 1982).
[17] *Alcan id.,* citing *U.S. v. Yoshida*, 526 F.2d 560, 568-69 (1975).
[18] *Board of Trustees v. United States*, 289 U.S. 48, 56–57 (1933); *Gibbons v. Ogden*, 22 U.S. 1, (1824).
[19] *Pulsifer v. United States*, 601 U.S. 124, 172 (2024).
[20] *Holy Land Found. v. Ashcroft*, 219 F.Supp.2d 57, 63 (D.D.C. 2002), 50 U.S.C. app. § 5(b).
[21] *U.S. v. Yoshida*, 526 F.2d 560, 577 (1975).
[22] 50 U.S.C. § 1702(a)(1).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION    5**

significant. TWEA is for war; IEEPA is for emergency situations that may not happen during war.[23] TWEA and IEEPA are not interchangeable.

Where statutory language is clear, judicial inquiry is at an end.[24] The government does not claim IEEPA is ambiguous – to the contrary, it argues the term "regulate" plainly means "tariffs" even though that word is never used. Congress spoke clearly. The government concedes as much. IEEPA does not support the Canada Orders executive overreach.[25] Statutory authority conferred by Congress "may not transgress constitutional limitations."[26]

*Yoshida* applied to TWEA, a prior statute that Congress intended to narrow with IEEPA. *Yoshida* was decided well prior to the development of the major questions doctrine, and is not controlling; it also contained significant guardrails:

> "The courts […] remain prepared [..] to impede an unreasonable or ultra vires exercise of the power granted in § 5(b). We do not here sanction the exercise of an unlimited power, which […] would be to strike a blow to our Constitution."[27]

---

[23] H.R. Rep. No. 459; *also* S. Rep. No. 466, 95th Cong., 1st Sess. 5 (1977).
[24] *Guido v. Mount Lemmon*, 859 F.3d 1168 (9th Cir. 2017); *U.S. v. Alvarez-Sanchez*, 511 U.S. 350, 356 (1994); *Botosan v. McNally*, 216 F.3d 827 (9th Cir. 1999).
[25] *Trim v. Reward Zone*, 76 F.4th 1157, 1161 (9th Cir. 2023), *Robinson v. Shell Oil*, 519 U.S. 337, 341 (1997).
[26] *J.G.G. v. Trump*, 25-766 (JEB) (D. D.C. Apr 16, 2025), *Abourzek v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986).
[27] *Yoshida*, *supra* n. 21.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION   6**

In *Yoshida* tariffs were limited, responding to a specific event (pulling the U.S. off the gold standard). The Canada Orders claim unlimited power to set tariffs at *any* level – by the executive *alone* – against any country, at any time. *Yoshida* is not controlling, and does not support the Canada Orders.

Hedging its bets, the government goes for double negatives: The absence of tariffs from exempt goods like food, clothing, and medicine, means tariffs are on the IEEPA allowed list. But Congress clearly set out what *was* included, and clearly exempted from regulation emergency only items. The language of the statute is plain, and the Court may not add what is missing.

This is a constitutional question. The founders placed the power to regulate commerce with Congress – alone.[28] Congress did not delegate that power to the extent claimed in the Canada Orders.

### 2. The Section 232 process was not followed.

The Proclamations rely on findings that are 7 years old.[29] That does not satisfy the process required in Section 232. Events in intervening years include a global pandemic and world-wide conflict.

The Supreme Court allowed Section 232 because it "established clear preconditions" on executive action.[30] None of those preconditions were satisfied

---

[28] Alexander Hamilton Federalist Paper No. 35.
[29] Doc. 9-2 and 9-3.
[30] *Fed. Energy Admin. v. Algonquin SNG Inc.,* 426 U.S. 548, 559 (1976).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION    7**

here. Section 232 has a mandatory process that were ignored.[31] Recent decisions express grave concerns as to whether the constitutional guardrails may be coming off.[32] Section 232 does not authorize an unlimited look-back. There must be findings that are temporally related to the stated emergency to justify tariffs now.

There has been no contemporaneous satisfaction of the essential preconditions that *Algonquin* relied on. The 2025 piggyback Proclamations violate due process rights and the separation of powers.

### B. Congress regulates commerce with the Indian Tribes.

Commerce with the Indian Tribes means "commerce with *the individuals* composing those Tribes."[33] In *U.S. v. Holliday*:

> [..] if commerce [..] is carried on with an Indian tribe, or with a member of such tribe, it is subject to be regulated by Congress [.. ] The right to exercise it in reference to any Indian tribe, or any person who is a member of such tribe, is absolute[..][34]

The Court held:

> Commerce with foreign nations [..] means commerce between citizens of the United States and citizens or subjects of foreign governments, as individuals. And so commerce with the Indian tribes, means commerce with the individuals composing those tribes.[35]

---

[31] 18 U.S.C. § 1862(b).
[32] *American Institute for International Steel v. U.S.,* 376 F.Supp.3d 1335, 1346; *Transpacific Steel v. U.S.*, 4 F.4th 1306 (Fed. Cir. 2021)(Reyna, J., dissenting).
[33] *Haaland v. Brackeen,* 143 S. Ct. 1609, 1655-1656.
[34] *U.S. v. Holliday*, 70 U.S. 407, 418 (1865); *Gibbons,* 22 U.S. 1 (1824).
[35] *Holliday*, at 417, citing and quoting *Gibbons.*

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION    8**

St. Goddard paid a random tariff on a replacement tractor wheel; Smith's grain was subject to tariffs; bookings for the Conway's St. Mary campground and the Mountain Chief's cab company are severely reduced because of the tariffs. The Executive Orders illegally regulate commerce for the Plaintiffs, enrolled members of the Blackfeet Tribe.[36]

From James Madison to Justice Gorsuch the thread is clear: "[T]he Legislature wields significant constitutional authority when it comes to tribal relations […] But that power […] belongs to Congress alone."[37]

### C. The Jay Treaty recognized rights.

In 2024, Senator Daines sponsored legislation expanding Jay Treaty rights.[38] The Plaintiffs cross the border using tribal identification, under the Jay Treaty.

The government's cases can be distinguished. First, these cases find that Native American rights were *granted* in the Jay Treaty.[39] But the Jay Treaty *recognized* – it did not grant – cross-border travel and commerce rights.[40] The Treaty of Ghent, signed in 1814, restored the rights of Britain's Indian allies to pre-

---

[36] *Holliday*; *Worcester v. State*, 31 U.S. 515, 580-581 (1832).
[37] Madison, Federalist No. 42; *McGirt v. Oklahoma*, 140 S.Ct. 2452, 2462; also 25 U.S.C. § 4301(a)(4).
[38] HR 2496 (2024).
[39] *Akins v. U.S.*, 551 F.2d 1222, (1977); *U.S. v. Garrow*, 88 F.2d 318 (1937), *Karnuth v. U.S.*, 279 U.S. 231 (1929); *U.S. v. Wholesale Supply* 822 F.Supp.2d 326 (W.D. N.Y. 2011).
[40] *U.S. v. McCandless* 18 F.2d 282, 283 (W.D.Pa. 1927).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION    9**

1812 status.[41] The Jay Treaty was status quo and must be read in favor of Indian rights.[42] Its 1796 explanatory provision held that no further treaties would derogate the recognized rights.[43] A Treaty cannot be abrogated by silence or innuendo.[44]

Second, these cases pertain to *congressional* regulation of commerce. The Jay Treaty is evidence of the constitutional framework that gave Congress alone power to regulate commerce with the Indian Tribes.

Here, the record shows, and evidence will further establish, the Blackfoot engaged in sophisticated trade when the Constitution was written, and were evolving and flexible economic actors. Through the 1800s the Blackfoot were trading in Canada and the United States, strategically optimizing their economic well-being as a people in the northwest plains.[45]

The historical record and the Constitution support Plaintiffs right to engage in commerce across the ports of authority at Del Bonita and Piegan/Carway, located on their tribal lands, without tariffs imposed by the executive.

---

[41] 8 Stat. 218.
[42] *Metlakatla Indian Cmty. v. Dunleavy*, 58 F.4th 1034, 1042 (9th Cir. 2022), citing *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766, (1985); *U.S. v. Michigan*, 471 F. Supp. 192 (1979), Treaty of Ghent, Article IX; *Karnuth v. U.S.*, 279 U.S. 231, 235 (1929).
[43] Explanatory Article (1796) https://avalon.law.yale.edu/18th_century/jayex1.asp (last visited April 24, 2025).
[44] *Minnesota v. Mille Lacs*,143 L.Ed.2d 270, 119 S.Ct. 1187, *U.S. v. Dion*, 476 U.S. 734, 738-740 (1986); also *Menominee v. U.S.*, 391 U.S. 404, 413 (1968).
[45] Hall Declaration.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION   10**

## IV. Constitutional due process claims

Plaintiffs are being randomly subjected to mercurial tariffs without any ability to participate or be heard. There is no connection between universal tariffs, which change daily, and the identified actions being targeted. The processes required by IEEPA and Section 232 have not been followed.

## V. Government's remaining arguments.

### A. Jurisdiction

FRCP 62(d) and FRAP 8(a)(1) allow this Court to maintain jurisdiction to preserve the status quo pending appeal after a transfer order.[46]

### B. Standing

Standing requires a "concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury."[47] A dollar of economic harm is an injury-in-fact for standing purposes.[48] The government does not contest standing for St. Goddard. In a suit with multiple plaintiffs, only one plaintiff need

---

[46] *Nolan v. Salmonsen*, CV 23-18-H-BMM (D. Mont. Mar 13, 2024) citing *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).
[47] *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017), *Massachusetts v. EPA*, 549 U.S. 497, 516, 517 (2007).
[48] *E. Bay Sanctuary v. Trump*, 950 F.3d 1242, 1267 n.5 (9th Cir. 2020) *Van v. LLR, Inc.*, 61 F.4th 1053, 1064 (9th Cir. 2023).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION   11**

have standing for the suit to proceed.[49]

Susan Webber has standing in her personal capacity as an enrolled member of the Blackfeet Nation and as a trustee for her constituents, not a prerogative of personal power. Webber's standing aligns with her responsibility to advance the core interests of the Blackfeet people she represents.

### C. Major questions doctrine

The government argues that the major questions doctrine should not apply to "presidential actions." But the question is whether *Congress* delegated its commerce clause authority. Congress must speak clearly to delegate decisions "of vast economic and political significance."[50] **The government's entire IEEPA argument is predicated on**: **linking it to TWEA; implying tariffs were intended; and** the "**broad authority**" **to act** – all forbidden by the **major questions doctrine.**[51]

### D. Reviewability

Recent cases review Orders like the ones at issue here.[52] Most of the cases

---

[49] *Mecinas v. Hobbs,* 30 F.4th 890, 897 (9th Cir. 2022), *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).
[50] *Nat'l Fed'n of Indep. Bus. v. Dept of Labor*, 142 S.Ct. 661, 211 L.Ed.2d 448 (2022), *Alabama Assn. of Realtors v. DHHS*,141 S.Ct. 2485 2489, 210 L.Ed.2d 856 (2021).
[51] *Id.*, citing *Gundy v. U.S.*, 139 S.Ct. 2116, 2141 (2019) (Gorsuch, J., dissenting)
[52] *D.B.U. v. Trump*,1:25-cv-01163-CNS (D. Colo. Apr 22, 2025), citing, *J.G.G. v. Trump* 2025 WL 890401, *9 (2025); *Loper Bright v. Raimondo*, 603 U.S. 369, 401 (2024).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION  12**

the government cites support review.[53] *Martin v. Mott* addressed executive power to call up a militia.[54] *Trump v. Hawaii* goes to the merits of the claim, not the reviewability of it.[55] The issue here is whether congress granted power to the executive to do what the Canada Orders do. This is a reviewable constitutional question.

Not one case cited by the government puts this case out of bounds. The words "national security" do not turn the executive into a king.[56] The Canada Orders is what the founders most feared and why the authority to tax and regulate commerce begins with the body most accountable to the people.[57]

An "emergency" of bilateral trade deficits is so flatly outside the scope of the NEA[58] and IEEPA[59] that the Court does not have to reach what kinds of

---

[53] *Japan Whaling Association v. American Cetacean Society Baldrige v. American Cetacean Society*, 478 U.S. 221, 230 (1986)(decided on merits); *Baker v. Carr*, 369 U.S. 186, 201 (1962)(appellants entitled to trial and decision) *Santiago v. Rumsfeld*, 425 F.3d 549, 560 (9th Cir. 2005)(review on merits); *Beacon Products Corp. v. Reagan*, 633 F.Supp. 1191 (D. Mass. 1986)(reviewed on merits), *U.S. v. Spawr Optical Research, Inc.,* 685 F.2d 1076, 1081 (9th Cir. 1982), (reviewed on merits); *United States v. Shih*, 73 F.4th 1077 (9th Cir. 2023)(reviewing IEEPA on merits), *Florsheim Shoe Co., Div. of Interco, Inc. v. U.S.*, 744 F.2d 787 (Fed. Cir. 1984)(review on merits).
[54] *Martin v. Mott*, 12 Wheat. 19, 25 U.S. 19, 6 L.Ed. 537 (1827)
[55] *Trump v. Hawaii*, 585 U.S. 667, 682-83 (2018).
[56] *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015).
[57] Art. I Section 8 Clause 3.
[58] National Emergencies Act (50 U.S.C. 1601 *et seq.*)
[59] 50 U.S.C. 1701 *et seq*.

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION   13**

emergencies are reviewable and what are not.[60] The U.S. has run a trade deficit consistently since 1976, a year before IEEPA. In 2005 the deficit was 6% of GDP. It is now 3%.[61] The trade deficit and any foreign trade practices that affect it are not unusual, did not arise suddenly, and are not a national emergency.[62]

Under IEEPA "[a]ny exercise of authorities to deal with any new threat" must "be based on a new declaration of national emergency."[63] A declaration of a national emergency must be confined "to a specific set of circumstances which constitutes a real emergency, and for no other purpose."[64]

The Canada Orders are illegal and reviewable.

## CONCLUSION

The 1770s and 1780s were turbulent times. The foundational document for a new republic gave congress exclusive and plenary power to regulate commerce. It must be honored.

DATED this 26th day of April, 2025.

TRANEL LAW FIRM P.C.

*Monica J. Tranel*
Monica J. Tranel
*Attorneys for Plaintiffs*

---

[60] Doc. 9-12, Exhibit 14, executive order 14257, para. 2.
[61] Exhibit 21, available at https://fred.stlouisfed.org/series/A019RE1A156NBEA# last visited April 24, 2025.
[62] Doc. 24, Barrett Dec, Exh. 21.
[63] *Id*. § 1701(b).
[64] H.R. Rep. 95–459 at 10 (1977).

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION  14**

## CERTIFICATE OF COMPLIANCE

Pursuant to MT Rule USDCT L.R. 7.1(d)(2)(E), I certify that the foregoing brief has a word count including footnotes as calculated by Microsoft Word for Mac of less than 3,250 words, excluding the certificate of compliance.

DATED this 26th day of April, 2025.

                                          TRANEL LAW FIRM P.C.

                                        *Monica J. Tranel*
                                        Monica J. Tranel
                                        *Attorneys for Plaintiffs*

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION  15**