Monica J. Tranel
TRANEL LAW FIRM, P.C.
401 Washington Street
Missoula, MT  59802
(406) 926-2662
mtranel@tranelfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief and David Mountain Chief,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES OF AMERICA, and, in her official capacity, KRISTI NOEM,<br><br>Defendants. | Cause No. CV 25-26-GF-DLC<br><br>**PLAINTIFFS MOTION FOR RECONSIDERATION UNDER RULE 59(e) OF FINAL ORDER DOC. NO. 40** |

## INTRODUCTION

Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief, and David Mountain Chief, enrolled members of the Blackfeet Tribe, respectfully move this Court to reconsider its final order transferring this case to the Court of International Trade (Doc. 40).

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF**  1
**FINAL ORDER DOC. 40**

This motion is brought under Federal Rule of Civil Procedure 59(e) and F.R.A.P. 4(A)(4), on the grounds that the final transfer Order was based on manifest legal error and resulted in an improper divestiture of this Court's jurisdiction over Plaintiffs' constitutional claims. The District Court retains authority to correct manifest errors of law, particularly where jurisdiction has been improperly relinquished in violation of constitutional law and statutory limitations under 28 U.S.C. § 1581(i). Plaintiffs request reconsideration of a final order; L.R. 7.3 applies to interlocutory orders and therefore this motion and brief are filed under Rule L.R. 7.1.

An appeal has been filed (Doc. 41) but not docketed as of the date of filing. This Court may act under Rule 59(e) to correct manifest errors of law.[1]

## LEGAL STANDARD

The District Court enjoys broad discretion in granting or denying a Rule 59(e) motion. A motion under Rule 59(e) may be granted if the Order was based on clear error.[2]

---

[1] 28 U.S.C. FRAP 62.1 (if appeal has been docketed and is pending, the court may: defer considering the motion; deny the motion; or state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue).

[2] *Mont. v. Haaland*, CV 19-12-M-DWM (D. Mont. Feb 28, 2023), citing *Kaufinann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022); Rule 59(e).

BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF    2
FINAL ORDER DOC. 40

A motion under Rule 59(e) requests an extreme remedy. Plaintiffs bring this motion to the Court because absent relief, they literally have been rendered without any forum for relief, since the Court of International Trade does not have jurisdiction to hear the claims brought by enrolled members of the Blackfeet Indian Tribe asserting Constitutional rights under the Indian Commerce Clause.

A motion under Rule 59(e) is appropriate to correct manifest legal error or to prevent injustice.[3] A District Court retains authority to correct errors even after an appeal is noticed. The Court of International Trade does not have jurisdiction to hear the Plaintiffs' Constitutional claims. The Court has discretionary authority to reconsider and modify orders particularly where no intervening rights have become vested in reliance on the Order.[4]

## ARGUMENT

I. **Transfer to the Court of International Trade is manifest legal error**

    A. **The Court of International Trade Lacks Jurisdiction Over Indian Tribes Under the Indian Commerce Clause.**

In its final Order granting the government's motion to transfer (Doc. 40) this Court held:

---

[3] *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).
[4] See e.g., *Samson v. Blixseth (In re Blixseth)*, 463 B.R. 896 (Bankr. Mont. 2012)(sitting in equity).

BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF     3
FINAL ORDER DOC. 40

the decision of whether to transfer this matter is not a discretionary one; where, as here, a matter falls *within the exclusive jurisdiction of the Court of International Trade,* the district court is divested of its jurisdiction and the matter *must* be transferred […]

Plaintiffs' challenge to the President's imposition of tariffs and duties under the IEEPA and Section 232, and the question of whether Plaintiffs are subject to the import surcharges pursuant to the Jay Treaty, fall squarely within the exclusive subject matter jurisdiction of the Court of International Trade. 28 U.S.C. § 1581(i)(1)(B), (D). Therefore, pursuant to Section 1581(i), this Court is divested of its jurisdiction and the case must be transferred.  (Doc. 40 p. 17).

This is clear error. The Plaintiffs' challenge is based on the Constitutional question of the Indian Commerce Clause that gives exclusive jurisdiction over commerce to Congress; the executive cannot lawfully exercise commerce authority as to the Plaintiffs, enrolled members of the Blackfeet Nation.

The *only* court that has subject matter jurisdiction over enrolled Blackfeet tribal members assertion of their Constitutional right that Congress alone has power to regulate commerce as to them is this Court.

The Indian Tribes cannot be conflated with foreign nations. The Court of International Trade has no jurisdiction over Indian Tribes. The jurisprudence

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF FINAL ORDER DOC. 40**                                             4

interpreting Indian Tribes and the Commerce Clause of Article I, Section 8, Clause 3 makes this point very clear.

The text of Article I, Section 8, Clause 3 provides: "Congress shall have Power…To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Thus, the Commerce Clause draws a clear distinction between "States," "foreign Nations," and "Indian Tribes."

As Justice Marshall observed in *Cherokee Nation v. Georgia*[5] "[t]he objects to which the power of regulating commerce might be directed, are divided into three distinct classes – foreign nations, the several states, and Indian Tribes. When forming this article, the convention considered them as entirely distinct." In fact, the language of the Clause, no more admits of treating Indian tribes, as States than treating foreign nations as States.[6]

This is foundational to the Constitution.

In the 1770s, 13 confederated states faced three intractable economic threats: states with different economies, based on an approach that would lead to civil war; foreign nations with superior navies and inland reach; and the Indian Tribes.[7] Ned Blackhawk writes:

---

[5] *Cherokee Nation v. Georgia*, 5 Pet. 1, 18, 8 L.Ed. 25 (1831).
[6] *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 191-92, 109 S. Ct. 1698, 104 L.Ed.2d 209 (1989).
[7] Proclamation of 1763, Pontiac's War.

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF**     5
**FINAL ORDER DOC. 40**

> "the federal government's ultimate power, authority, and sovereignty over Native peoples (and of the American continent) became enshrined in the U.S. Constitution. Partly due to irresolvable struggles over interior lands and with Native Nations, America's Founding Fathers abandoned the first government of the United States – the Articles of Confederation – and adopted a new constitutional government in 1787."[8]

When the Treaty of Paris ended the revolutionary war in 1783, each of these economic threats remained, and was nation-ending. The Commerce Clause was explicitly written to address each of them, separately. The "lack of debate over Indian affairs revealed a rare consensus among the delegates."[9]

On September 13, 1788 the Constitution of the United States was ratified. Article I, Section 8, Clause 3 transformed the power of the new nation to conduct commerce *among the states*, with *foreign nations*, and *with the Indian Tribes* by explicitly granting that power to Congress alone. This is the Commerce Clause. The Supremacy Clause of Article VI ensures that federal laws – including treaties – are the Supreme law of the land.

---

[8] Ned Blackhawk, <u>The Rediscovery of America, Native Peoples and the Unmaking of U.S. History</u>, (2023), Ch. 6 *Colonialism's Constitution, The Origins of Federal Indian Policy*, pp. 178-179. Professor Blackhawk advised Historian Ryan Hall whose Declaration (Doc. 26) sets out the history of the Blackfoot people at the time the Constitution and Jay Treaty were written. Hall is listed as a witness to testify at the May 1, 2025 hearing on Plaintiffs request for a preliminary injunction.
[9] Blackhawk, *id*., Ch. 6 *Indians and the U.S. Constitution*, pp. 204 – 206; see also Ablavsky, Gregory, *Empire States: The Coming of Dual Federalism*, Yale Law Journal Vol. 128 No. 7, May 2019.

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF FINAL ORDER DOC. 40**     6

Two centuries later, the Court in *Cotton Petroleum* observed that the Interstate Commerce and the Indian Commerce Clause have very different applications.[10] The central function of the Interstate Commerce Clause is concerned with maintaining free trade among the states. But "the central function of the Indian Commerce Clause is to provide Congress with the plenary power to legislate in the field of Indian affairs."[11]

The reasoning of *Cotton Petroleum Corp*. and *Cherokee Nation* applies with even more force in the context of the distinctions between the Indian Commerce Clause and Foreign Nations Commerce Clause. Neither the state Interstate Commerce Clause nor the Foreign Nation Commerce Clause contain the additional element in which the U.S. has a fiduciary duty toward Indian Tribes.[12]

Only in the context of Indian people does the federal government have a fiduciary relationship. As the Court stated in *Haaland* "[T]he 'trust relationship between the United States and Indian people' informs the exercise of legislative power. [..]. As we have explained, the Federal Government has 'charged itself with moral obligations of the highest responsibility and trust' toward Indian Tribes."[13]

---

[10] *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. at 191-92.
[11] *Cotton Petroleum, id*., c.f. *Morton v. Mancari*, 417 U.S. 535, 551-552, 94 S. Ct. 2474, 2483-2484, 41 L.Ed.2d 290 (1974); F. Cohen, Handbook of Federal Indian Law, 207-208 and nn. 2, 3, and 9-11(1982).
[12] *Haaland v. Brackeen*, 599 U.S. 255, 274-275, 143 S. Ct. 1609, 216 L.Ed.2d 254 (2023).
[13] *Haaland*, 599 U.S. at 274-275 (cleaned up).

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF FINAL ORDER DOC. 40**  7

The Court's fundamental error of law that is manifestly unjust is to approach the government's motion to transfer as akin to a venue issue. Doc. 40, Order p. 16 (framing the question as "whether the Court of International Trade has *exclusive* subject matter jurisdiction pursuant to Section 1581(i)"). But because of the Indian Commerce Clause of Article I, Section 8, Clause 3, this is far more than a question of dueling jurisdictions as the *K-Mart* decision addressed.[14] It is a fundamental jurisdiction issue and the CIT has no jurisdiction. The transfer Order sends the Plaintiffs out of Court completely with no available redress for their Constitutional claims. It does what the federal government has done too many times to the Indian Tribes – leaves them nowhere to go. This must be corrected to prevent manifest injustice.

The transfer motion and transfer Order are in effect dismissal under Rule 12(b)(1), which addresses the fundamental question of jurisdiction. This "threshold issue" is a subject matter jurisdiction issue under Rule 12(b)(1) and must be reviewed *de novo*.[15]

The Commerce Clause (Article I, Section 8, Clause 3) distinctly separates Indian Tribes from foreign nations. Congress has plenary authority over Indian

---

[14] *See K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 183 (1988).
[15] *United States ex. rel. Solis v. Millennium Pharmaceuticals, Inc.,* 885 F.3d 623, 625 (9th Cir. 2018).

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF       8
FINAL ORDER DOC. 40**

commerce.[16] The Court of International Trade's jurisdiction under 28 U.S.C. § 1581(i) applies only to international trade matters. It does not grant authority over tribal commerce, rendering the transfer legally invalid.

Finally, to clarify, commerce with the Indian Tribes means "commerce with *the individuals* composing those Tribes."[17] In *U.S. v. Holliday*:

> [..] if commerce [..] is carried on with an Indian tribe, or with a member of such tribe, it is subject to be regulated by Congress [.. ] The right to exercise it in reference to any Indian tribe, or any person who is a member of such tribe, is absolute[..][18]

> Commerce with foreign nations [..] means commerce between citizens of the United States and citizens or subjects of foreign governments, as individuals. And so commerce with the Indian tribes, means commerce with the individuals composing those tribes.[19]

The Plaintiffs, enrolled members of the Blackfeet Tribe, bring Constitutional claims that can only be heard in Federal District Court. The CIT does not have jurisdiction.[20]

Congress regulates commerce with the Plaintiffs. The executive is constitutionally prohibited from engaging in commerce with the Indian Tribes, and the Canada Orders are illegal as to these Plaintiffs. Plaintiffs ask the Court to reconsider its decision to transfer to the Court of International Trade. The

---

[16] *Cotton Petroleum*, 490 U.S. at 191-92, *Cherokee Nation,* 5 Pet. 1, 18 (1831).
[17] *Haaland v. Brackeen,* 143 S. Ct. 1609, 1655-1656.
[18] *U.S. v. Holliday*, 70 U.S. 407, 418 (1865); *Gibbons v. Ogden,* 22 U.S. 1 (1824).
[19] *Holliday*, at 417, citing and quoting *Gibbons.*
[20] *Holliday*; *Worcester v. State*, 31 U.S. 515, 580-581 (1832).

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF            9
FINAL ORDER DOC. 40**

Constitutional issue of whether the Canada Orders violate Congress's exclusive and plenary power to regulate commerce with the Indian Tribes lies exclusively with this Court. The District Court has exclusive jurisdiction over Indian Tribes as set out in 28 U.S.C. § 1362. Nothing in 28 U.S.C. § 1581(i)(1)(B), (D) vests exclusive subject matter jurisdiction in the CIT over Indian Tribes. The specific grant of jurisdiction to District Courts in § 1362, means there is no jurisdiction over this case at the CIT.

Because the Court of International Trade has no jurisdiction over the Plaintiffs[21] the transfer order is effectively a final order and appealable under the *de novo* standard of review to the Ninth Circuit Court of Appeals.[22]

### B.   The Jay Treaty of 1794 Protects Tribal Trade Rights.

The Jay Treaty recognizes enrolled tribal members right to conduct trade across the U.S.-Canada border, creating an independent basis for exempting Indian Tribes from executive branch tariffs. In final Order Doc. 40, the District Court failed to consider this treaty protection, violating established principles of tribal sovereignty and federal trust responsibility.[23] The District Court's finding that claims for the Jay Treaty can be heard at the CIT is error as applied to this case.[24]

---

[21] 28 U.S.C. Section 1362, Am. Comp. Para. 7 (Doc. 15).
[22] *S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of Cal.*, 90 F.4th 953, 957 (9th Cir. 2024).
[23] *Haaland v. Brackeen*, 599 U.S. 255, 274-75 (2023)
[24] *Akins v. Unites States*, 551 F.2d 1222, (CCP 76-12, 1977).

BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF                10
FINAL ORDER DOC. 40

The cases cited in the District Court's Order to *congressional* regulation of commerce with Indian Tribes.[25] The issue here is whether the *executive* can regulate commerce with the Indian Tribes. The Jay Treaty is relevant to the analysis because it is evidence of the Constitutional framework that gave Congress *alone* power to regulate commerce with the Indian Tribes.

Plaintiffs seek redress for the Canada Orders violation of this foundational principle. The District Court's order is manifestly incorrect as a matter of law in that it assigns this case to the CIT on the basis that challenges to congressional action may be heard there. That is not the case Plaintiffs bring. Plaintiffs seek a determination that the executive may not regulate commerce with the Indian Tribes. None of the cases cited in the transfer Order on the Jay Treaty place this case within the jurisdictional purview of the CIT.

## II.   The Notice of Appeal Does Not Preclude Reconsideration.

Although Plaintiffs have filed a Notice of Appeal (Doc. 41), this Court retains authority to reconsider its order where manifest legal error exists. Courts have recognized that Rule 59(e) motions filed promptly after judgment may be

---

[25] *Akins v. Saxbe*, 380 F.Supp 1210, 1217 (D.Me. 1974)(deferring to Congressional purpose); *United States v. Garrow*, 88 F.2d 318, 24 CCPA 410 (Cust. Ct. 1937)(challenging the Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 411)); *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329 (Fed. Cir. 2015)(tariff classification ruling for "white sauce" under the Harmonized Tariff Schedule).

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF FINAL ORDER DOC. 40**  11

decided despite an appeal, as appellate jurisdiction is not fully vested until the district court's reconsideration motion is resolved.[26]

Plaintiffs ask this Court to vacate the transfer order under Rule 59, retain jurisdiction over Plaintiffs' constitutional claims, and hold the hearing on May 1, 2025 as scheduled.

## CONCLUSION

The Court's transfer Order as to these Plaintiffs relegates them to a forum that has no jurisdiction over them or their claims. It is manifestly incorrect as a matter of law. Plaintiffs respectfully request that this Court grant reconsideration under Rule 59(e), vacate the transfer order, and retain jurisdiction over Plaintiffs' constitutional claims.

Respectfully submitted this 28th day of April, 2025.

TRANEL LAW FIRM, P.C.

By: __/s/ *Monica Tranel*__
        Monica Tranel

---

[26] FRAP 4(a)(4)(A); FRCP 59(e).

## **CERTIFICATE OF COMPLIANCE**

Pursuant to MT Rule USDCT L.R. 7.1(d)(2)(A) and (E), I certify that the foregoing brief has a word count including footnotes as calculated by Microsoft Word for Mac of less than 6,500 words, excluding the certificate of compliance.

DATED this 28th day of April, 2025.

                TRANEL LAW FIRM P.C.

                *Monica J. Tranel*
                Monica J. Tranel
                *Attorneys for Plaintiffs*