Monica J. Tranel
TRANEL LAW FIRM, P.C.
401 Washington Street
Missoula, MT  59802
(406) 926-2662
mtranel@tranelfirm.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief and David Mountain Chief,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES OF AMERICA, and, in her official capacity, KRISTI NOEM,<br><br>Defendants. | Cause No. CV 25-26-GF-DLC<br><br><br>**PLAINTIFFS REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION UNDER RULE 59(e) OF FINAL ORDER DOC. NO. 40** |

Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief, and David Mountain Chief, enrolled members of the Blackfeet Tribe, ask this Court to reconsider its final order transferring this case to the Court of International Trade

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION     1
OF FINAL ORDER DOC. 40**

(Doc. 40). This Court may act under Rule 59(e) to correct manifest errors of law or to prevent manifest injustice.[1] An appeal is pending.

## ARGUMENT

This case arises under the Constitution.

The government opposes reconsideration but does not address the fact that Plaintiffs' complaint arises under the constitution. The Court of International Trade is a creature of Congress, and its statutory jurisdiction under 28 U.S.C. § 1581(i) applies only to international trade matters. The CIT does not have authority over tribal commerce (Article I, Section 8, Clause 3 of the Constitution) rendering the transfer legally invalid. The *only* court that has subject matter jurisdiction over Blackfeet tribal members' assertion of their Constitutional right under the Indian Commerce Clause is this Court. Article III § 2 Cl. 1.

The government argues: "The Court of International Trade thus has exclusive jurisdiction over challenges arising from statute providing for tariffs, or challenging administration or enforcement of tariffs—including those brought by

---

[1] Fed.R.Civ.Pro. 62.1; *Mendia v. Garcia*, 874 F.3d 1118 (9th Cir. 2017), citing Fed. R. App. P. 12.1 advisory committee notes to 2009 adoption, explaining that the rule is intended to work in conjunction with FRCP 62.1, which allows a party to ask the district court for an indicative ruling on an issue the court is without jurisdiction to decide because of a pending appeal.

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION     2
OF FINAL ORDER DOC. 40**

tribal members."[2] The Plaintiffs challenge in this case does not arise from statute. It arises from the Constitution.[3]

The government argues that legal arguments are not relevant to jurisdiction. Plaintiffs agree. The claims must be judged from the face of the complaint, and all allegations taken as true.[4] Plaintiffs request relief under the Constitution. Relevant portions of the First Amended Complaint include the following:

<u>Count I, Ultra Vires Presidential Action para. 138 – 151:</u>

> 138. Fundamental to the Constitution is that the separation of powers prevents Congress from concentrating power in the Executive Branch. The separation of powers "protects the liberty of the individual from arbitrary power."
>
> 142. There is no enumerated or inherent executive authority from the Constitution to impose tariffs. To the contrary, tariffs lie exclusively with congress. They are expressly *not* part of the executive branch's core constitutional power.
>
> 148. […] Article I of the Constitution expressly gives Congress alone the power to impose tariffs and to regulate commerce

---

[2] Doc 53 pp. 5-6.
[3] Doc. 15, First Amended Complaint, ¶¶ 7-10.
[4] *Savage v. Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), overruled on other grounds by *Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024).

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION     3
OF FINAL ORDER DOC. 40**

with foreign Nations, and among the several States, and with the Indian Tribes. This authority is a uniquely legislative function that may not be delegated. The Canada Orders are *ultra vires* because not only has Congress failed to delegate the authority that the Executive branch is exercising, it may not constitutionally do so.

150.   […] The Canada Orders are *ultra vires* because they violate the separation of powers by exercising power granted exclusively to congress and because Congress cannot delegate the power exercised in these Orders. In addition the Canada Orders violate the Jay Treaty's rights to Native Americans to cross the border without paying tariffs.

<u>Count II: Due Process, para. 152 - 160</u>

156.   The Canada Orders interfere with and impair multiple liberty and property interests protected by the Due Process Clause. Plaintiffs have an ongoing business and community interest in continued cross border trade without universal tariffs unilaterally imposed in violation of the constitutional framework that limits such action to Congress, and provides an opportunity to be heard and for due process.

> 158.  […]  If tariffs are a reasonable approach, Congress is the sole branch of government that can impose them, especially to the scope and extent set out in the Canada Orders. The decision to impose the tariffs was based on improper purposes. Among other improper purposes, the Canada Orders were adopted to raise revenue to justify tax cuts, not to address a stated emergency.

<u>Count III, Due Process, para. 161 – 169</u>

> 166.  […] The Canada Orders fail to provide adequate notice as to what tariffs may be imposed and why. The Canada Orders are unconstitutionally vague because Plaintiffs cannot plan, hire, prepare, order, and address the upcoming summer season based on the language in the Orders. There is no way to knowing how long the tariffs will last, why they remain, and whether they will change.

The First Amended Complaint challenges the President's attempts to exercise power he does not have. The text of Article I, Section 8, Clause 3 could not be clearer: "**Congress shall have Power**…To regulate Commerce with foreign Nations, and among the several States, **and with the Indian Tribes**." Thus, the Commerce Clause draws a clear distinction between "States," "foreign Nations," and "Indian Tribes." The President's attempts to regulate commerce with the Indian Tribes, including the Plaintiffs as enrolled members of the Blackfoot Tribe,

are unconstitutional.[5] They violate Article I, Section 8, Clause 3.

The government cites *Akins* and *Garrow* to argue that the CIT has considered claims by Native Americans under the Jay Treaty and therefore has jurisdiction over these constitutional claims. This compares apples to oranges. The argument in this case, as distinct from that made in *Akins*, is that Native Americans have a constitutional right to engage in commerce as **regulated by Congress** – and Congress alone. The issue in *Akins* and *Garrow* was *congressional* regulation of commerce with Indian Tribes.[6] The issue here is whether the *executive* can regulate commerce with the Indian Tribes.[7]

The Jay Treaty is evidence of the constitutional framework that gave Congress alone power to regulate commerce with the Indian Tribes.[8] The 1796 explanatory provision held that no further treaties would derogate the recognized

---

[5] *Cotton Petroleum v. New Mexico*, 490 U.S. 163, 191-92, 109 S. Ct. 1698, 104 L.Ed.2d 209 (1989); *Cherokee Nation v. Georgia*, 5 Pet. 1, 18, 8 L.Ed. 25 (1831).
[6] *Akins v. U.S.*, 551 F.2d 1222, (1977); *Akins v. Saxbe*, 380 F.Supp 1210, 1217 (D.Me. 1974)(deferring to Congressional purpose); *U.S. v. Garrow*, 88 F.2d 318, 24 CCPA 410 (1937)(challenging Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 411)); *Int'l Custom Prods., Inc. v. U.S.*, 791 F.3d 1329 (Fed. Cir. 2015)(classification for "white sauce" under Harmonized Tariff Schedule).
[7] *Karnuth v. U.S.*, 279 U.S. 231 (1929); *U.S. v. Wholesale Supply* 822 F.Supp.2d 326 (W.D. N.Y. 2011).
[8] *U.S. v. McCandless* 18 F.2d 282, 283 (W.D.Pa. 1927).

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION     6
OF FINAL ORDER DOC. 40**

rights.[9] A Treaty cannot be abrogated by silence or innuendo.[10]

The Jay Treaty and the *Akins* and *Garrow* cases are further support for this Court to reconsider its transfer Order. The Constitution is the source of the rights Plaintiffs assert here – unlike in *Akins* and *Garrow*. The Constitutional context must be considered in deciding the merits of this case. The CIT is not set up to address and weigh constitutional contextual history of the 1700s. Nor is it set up to address foundational issues related to Native American law under the Constitution. That is the case Plaintiffs bring.

The Blackfoot people engaged in sophisticated trade when the Constitution was written, and were evolving and flexible economic actors. Through the 1800s the Blackfoot were trading in Canada and the United States, strategically optimizing their economic well-being as a people in the northwest plains.[11] The historical record and the Constitution support Plaintiffs right to engage in commerce across the ports of authority at Del Bonita and Piegan/Carway, located on their tribal lands, without tariffs imposed by the executive. Since the government concedes that the tariffs do not apply to the Indian Tribes, then the CIT clearly does not have jurisdiction over these claims, and the case should

---

[9] Explanatory Article (1796) https://avalon.law.yale.edu/18th_century/jayex1.asp (last visited May 13, 2025).
[10] *Minnesota v. Mille Lacs*,143 L.Ed.2d 270, 119 S.Ct. 1187, *U.S. v. Dion*, 476 U.S. 734, 738-740 (1986); also *Menominee v. U.S.*, 391 U.S. 404, 413 (1968).
[11] Doc. 26, Second Hall Declaration.

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION       7
OF FINAL ORDER DOC. 40**

remain in Montana District Court.

As enrolled members of an Indian Tribe, Plaintiffs are exempt from these executive branch tariffs. The Commerce Clause distinguishes Indian Tribes from foreign nations. Congress has plenary authority over Indian commerce.[12] The Executive orders regulating commerce cannot legally apply to the Plaintiffs. The District Court should reconsider the transfer order to enter judgment for Plaintiffs on the merits.

A transfer motion is not a venue issue. This Court should reconsider its transfer order and address the question of its own jurisdiction as required by 28 U.S.C. § 1631. The fundamental error in the transfer Order was to consider transfer akin to venue.[13] The Indian Commerce Clause of Article I, Section 8, Clause 3, makes this far more than a question of dueling jurisdictions.[14] It is a fundamental jurisdiction issue and the CIT <u>has no jurisdiction</u>. The transfer Order sends the Indian Plaintiffs out of Court completely with no available redress for their Constitutional claims. It does what the federal government has done too many times to the Indian Tribes – leaves them nowhere to go.

The government cites *Dillon v. Montana* to argue that Plaintiffs cannot avail themselves of 28 U.S.C. §1362. *Dillon* is neither relevant nor controlling. *Dillon*

---

[12] *Cotton Petroleum*, 490 U.S. at 191-92, *Cherokee Nation,* at 18.
[13] Doc. 40, Order p. 16.
[14] Doc. 40, citing *K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 183 (1988).

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION   8
OF FINAL ORDER DOC. 40**

involved a 42 U.S.C. §1983 claim that a state could not tax a Tribes' income on their reserved lands.[15] Federal subject matter jurisdiction was alleged pursuant to 28 U.S.C. § 1343(3). The issue in *Dillon* was whether the Tax Injunction Statute in §1341 operated as an absolute bar to federal jurisdiction in state taxation cases.

This misses the constitutional nature of the Plaintiffs' claims, and it ignores the long line of Supreme Court cases that hold commerce with the Indian Tribes means "commerce with *the individuals* composing those Tribes."[16]

> [..] if commerce [..] is carried on with an Indian tribe, or with a member of such tribe, it is subject to be regulated by Congress [.. ] The right to exercise it in reference to any Indian tribe, or any person who is a member of such tribe, is absolute[..][17]
>
> Commerce with foreign nations [..] means commerce between citizens of the United States and citizens or subjects of foreign governments, as individuals. And so commerce with the Indian tribes, means commerce with the individuals composing those tribes.[18]

Here, enrolled members of the Blackfeet Tribe bring Constitutional claims. They can only be heard in District Court.[19]

The government provides no way around this black letter authority. In addition, the fact that the tariffs are intended to raise revenue totally defeats the government's reliance on 28 U.S.C. § 1581(i)(1)(B) for jurisdiction:

---

[15] *Dillon v. State of Mont.*, 634 F.2d 463 (9th Cir. 1980).
[16] *Haaland v. Brackeen,* 143 S. Ct. 1609, 1655-1656, 599 U.S. 255, 274-75.
[17] *U.S. v. Holliday*, 70 U.S. 407, 418 (1865); *Gibbons v. Ogden,* 22 U.S. 1 (1824).
[18] *Holliday*, at 417, citing and quoting *Gibbons.*
[19] *Holliday*; *Worcester v. State*, 31 U.S. 515, 580-581 (1832).

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION   9
OF FINAL ORDER DOC. 40**

- The House budget bill titled "THE ONE, BIG, BEAUTIFUL BILL" incorporates revenue from tariffs as a key component of its fiscal strategy to offset proposed tax cuts and spending increases, including Medicaid reductions;[20]

- The President's own words claim the tariffs are to raise revenue: "They're a beautiful thing for us," [..] "If you can use them, if you can get away with using them, it's going to make us very rich. And we'll be paying off debt, we'll be lowering your taxes very substantially because so much money will be taken in that we'll be able to lower your taxes even beyond the tax cut that you're going to be getting."[21]

- Treasury Secretary Scott Bessent claims that tariff revenue will help with income tax cuts;[22]

- The President said when announcing the tariffs "We're going to start being smart, and we're going to start being very wealthy again," claiming the new

---

[20] Available at https://prod-i.a.dj.com/public/resources/documents/GOPtaxplan-2025-05-12.pdf (last visited May 13, 2025).
[21] See https://apnews.com/article/trump-tariffs-deals-china-trade-02986c700a2d46c8b1ba85afe77d139f last visited May 13, 2025.
[22] See https://tax.thomsonreuters.com/news/treasury-hopes-to-offset-tax-cut-costs-with-tariff-revenue/#:~:text=Treasury%20Secretary%20Scott%20Bessent%20expressed,negotiations%20with%20congressional%20taxwriters%20on last visited May 13, 2025.

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION   10
OF FINAL ORDER DOC. 40**

policy would generate "trillions and trillions of dollars to reduce our taxes and pay down our national debt."[23]

- The treasury department is claiming tariff revenues are helping to reduce the budget deficit.[24]

In transferring the case to the CIT, this Court did not find a "want" of jurisdiction under 28 U.S.C. § 1631; rather, it found that the CIT had exclusive jurisdiction under 28 U.S.C. § 1581(i)(1)(B), a provision that *only* applies to non-revenue tariffs.[25] Since the administration has clearly, consistently, and repeatedly stated that the point of the tariffs is to raise revenue, the government's complete reliance on §1581(i)(1)(B) crumbles. The CIT has no jurisdiction.

This court should reconsider its decision to transfer the case to the CIT – a court without jurisdiction to hear this case, and a circuit without jurisdiction to hear an appeal from any decision the CIT might issue on jurisdiction.[26] In assessing the manifest injustice of the transfer Order and whether reconsideration is appropriate, this Court should weigh the fact that under clear Ninth Circuit law, Plaintiffs will

---

[23] See https://en.wikipedia.org/wiki/Liberation_Day_tariffs and also https://www.nytimes.com/live/2025/04/02/business/trump-tariffs-liberation-day (last visited May 13, 2025).
[24] See https://www.foxbusiness.com/politics/record-16b-tariff-inflow-helped-ease-us-budget-deficit-rate (last visited May 13, 2025).
[25] 28 U.S.C. § 1581(i)(1)(B): the CIT has exclusive jurisdiction over tariffs on imports that are not intended to raise revenue.
[26] *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1129–30 (9th Cir. 2012).

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION   11
OF FINAL ORDER DOC. 40**

have to seek review of any decision from the CIT to the Ninth Circuit. The transfer Order adds another layer of litigation on a case where Plaintiff seek immediate injunction relief to address irreparable harm.[27] Sixteen declarations have been filed setting out the factual claims of harm. Adding litigation layers is manifestly unjust in these circumstances where the Court is positioned to enjoin the harm and retain the status quo until a decision on the merits can be reached.

The government argues that Plaintiffs can argue to the CIT that it doesn't have jurisdiction. Mapping the procedural trajectory that unfolds for these Plaintiffs, the manifest injustice of the transfer Order is clear:

If the CIT claims jurisdiction, Plaintiffs are prohibited from appealing the transfer order to the Federal Circuit Court and must go to the Ninth Circuit to appeal.[28] Transfer orders are reviewable only in the circuit of the transferor district court.[29] If the Ninth Circuit decides that the Montana District Court has jurisdiction, the case ends up back here in Montana.

If the CIT denies jurisdiction, Plaintiffs end up back in Montana.

---

[27] *Terenkian,* citing *Wye Oak Tech., Inc. v. Republic of Iraq,* 666 F.3d 205, 209 (4th Cir. 2011); *Jones v. InfoCure Corp.,* 310 F.3d 529, 534 (7th Cir. 2002).
[28] *Rigsby v. Godaddy Inc.*, 59 F.4th 998 (9th Cir. 2023), *Posnanski v. Gibney*, 421 F.3d 977, 980 (9th Cir. 2005); also, *In re U.S. Dept of Educ.*, 25 F.4th 692, 698 (9th Cir. 2022).
[29] *Posnanski*, 421 F.3d at 980, citing *American Fidelity Fire Ins. Co. v. United States District Court*, 538 F.2d 1371, 1376–77 & n. 4 (9th Cir.1976);15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice And Procedure</u> § 3846, at 359 (1986).

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION   12 OF FINAL ORDER DOC. 40**

The only circumstance in which the Plaintiffs do not end up in Montana, is if the CIT asserts that it has jurisdiction, and the Ninth Circuit affirms that decision. This case is one of the narrow situations where an indicative ruling under 62.1 may be appropriate. Rule 62.1 allows a district court to indicate how it would rule on a motion if it had the authority to do so, despite a pending appeal.[30]

Under Rule 62.1 a district court can do one of three things: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."[31] Plaintiffs ask this Court to issue an indicative ruling that it would grant the motion to reconsider its jurisdiction over the constitutional claims presented by the Plaintiffs, or at least conclude that it raises substantial issues.

The CIT's jurisdiction is not exclusive. It is nonexistent. Plaintiffs' claims arise under the Constitution. The government argues that the core of the Plaintiffs' claim is to enjoin tariffs. That is the *relief* Plaintiffs seek. But the claim is asserted under the Constitution, as clearly set out in Article I, Section 8, Clause 3: "Congress shall have Power…To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." The Commerce Clause

---

[30] Fed. R. Civ. P. 62.1(a); *Mendia v. Garcia*, 74 F.3d 1118, 1121 (9th Cir. 2017); *Best Odds Corp. v. iBus Media Ltd.* (*Best Odds Corp. II*), 655 F. Appx 582, 583 (9th Cir. 2016)(nonpublished).
[31] Fed. Rule Civ. Proc. 62.1(a).

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION   13
OF FINAL ORDER DOC. 40**

draws a clear distinction between "States," "foreign Nations," and "Indian Tribes." The government concedes that the President's tariffs do not apply to Indian Tribes. The government must also concede the CIT does not have jurisdiction.

Plaintiffs ask this Court to reconsider its decision to transfer this case to address both the manifest error of law regarding jurisdiction; and also to address the manifest injustice in sending these Indian Plaintiffs into a no-man's land. Their request for a preliminary injunction has not been addressed by any court. While time is running out, there is still a window to salvage the 2025 season. Plaintiffs ask the Court to use its power to enjoin the tariffs so they may engage in the family, community and tribal commerce that sustains them and their way of life.

## CONCLUSION

The Constitution places exclusive, plenary power with Congress to regulate commerce with the Indian Tribes. That power has never been delegated – nor can it be. The Executive orders violate the plain, simple, crystal clear language of the Constitution. Tribally enrolled members seek to redress their grievances against a President behaving like he is a king. The Constitution protects Plaintiffs from that.

The Court's transfer Order relegates Plaintiffs to a forum that has no jurisdiction over their claims. It is manifestly incorrect as a matter of law. Plaintiffs respectfully request that this Court grant reconsideration under Rule 59(e), vacate the transfer order, and retain jurisdiction over Plaintiffs' constitutional claims.

**REPLY BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION   14
OF FINAL ORDER DOC. 40**

Respectfully submitted this 13th day of May, 2025.

                                                    TRANEL LAW FIRM, P.C.

                                    By:   /s/ *Monica Tranel*
                                                Monica Tranel

# CERTIFICATE OF COMPLIANCE

Pursuant to MT Rule USDCT L.R. 7.1(d)(2)(B) and (E), I certify that the foregoing brief has a word count including footnotes as calculated by Microsoft Word for Mac of less than 3,250 words, excluding the certificate of compliance.

DATED this 13th day of May, 2025.

                                    TRANEL LAW FIRM P.C.

                                    *Monica J. Tranel*
                                    Monica J. Tranel
                                    *Attorneys for Plaintiffs*