IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| SUSAN WEBBER; JONATHAN ST. GODDARD; RHONDA MOUNTAIN CHIEF; and DAVID MOUNTAIN CHIEF, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM in her official capacity; and THE UNITED STATES OF AMERICA, <br><br> Defendants. | CV 25–26–GF–DLC <br><br><br> ORDER |

Before the Court is Plaintiffs Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief, and David Mountain Chief's ("Plaintiffs") Motion for Reconsideration of the Court's April 25, 2025, Order transferring jurisdiction of this matter to the Court of International Trade ("CIT") (Doc. 40). (Doc. 45.) Plaintiffs seek reconsideration of the Court's Order pursuant to Federal Rule of Civil Procedure 59(e) and Federal Rules of Appellate Procedure 4(a)(4)(A). (*Id.* at 1.) For the reasons herein, the Motion will be denied.

## BACKGROUND

Because the Parties and the Court are familiar with the factual and legal background of this case, the Court will only summarize those facts and supplement with relevant developments. Since taking office on January 20, 2025, the President has declared several national emergencies and imposed various tariffs in response to those declared emergencies. Plaintiffs challenge two executive orders— Executive Order 14193, which declares a national emergency and invokes authority under the International Economic Powers Act ("IEEPA") to impose, in relevant part, duties on specific goods imported into the United States from Canada, and Executive Order 14257, which invokes authority under the IEEPA to impose a 10% duty on most imported goods—and two proclamations, 10896 and 10895, which impose a 25% duty on Canadian steel, aluminum articles, and derivative articles pursuant to Section 232 of the Trade Expansion Act of 1962. (Doc. 15 ¶¶ 2–3.)

Plaintiffs Susan Webber and Jonathan St. Goddard filed a Complaint and Motion for Preliminary and Permanent Injunction on April 4, 2025. (Docs. 1, 3.) On April 11, Plaintiffs filed a First Amended Complaint ("FAC") to add Rhonda Mountain Chief and David Mountain Chief as additional plaintiffs. (Doc. 15.) Plaintiffs are all enrolled members of the Blackfeet Nation. (*Id.* ¶ 5.)

The FAC bring three claims for relief: Count I alleges that the Canada Orders are an "*ultra vires*" Presidential action; Count II alleges that the Canada Orders are an unconstitutional deprivation of procedural due process in violation of the Due Process Clause of the Fifth Amendment of the U.S. Constitution; and Count III alleges that the Canada Orders are unconstitutionally vague and violate the Due Process Clause of the Fifth Amendment. (*Id.* ¶¶ 137–69.) Plaintiffs also allege that the Canada Orders violate the Jay Treaty of 1794. (*Id.* ¶ 170.) Though the Executive Orders and Proclamations impact foreign nations other than Canada, Plaintiffs specifically challenge the aspects of the Canada Orders affecting commerce across the Blackfeet Nation on the United States-Canada border. (*Id.* ¶ 3.)

On April 14, Defendants filed a Motion to Transfer to the CIT (Doc. 18) and, on April 25, the Court granted Defendants' Motion. (Doc. 40.) In issuing its transfer Order, the Court relied upon *United States v. Yoshida International, Inc.*, 526 F.2d 560, 584 (C.C.P.A. 1975), which upheld the imposition of an import duty enacted pursuant to the IEEPA's predecessor, the Trading with the Enemies Act ("TWEA"). The Court concluded that Plaintiffs' claims fell within the purview of 28 U.S.C. § 1581(i), which provides the CIT with "exclusive jurisdiction" over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . (B) tariffs, duties,

fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; [or] (D) administration and enforcement" of such matters. (*Id.* at 11–17.)

Plaintiffs subsequently filed a Notice of Appeal (Doc. 41) and a Motion for Preliminary Injunction Pending Appeal (Doc. 42). On April 28, the Court denied Plaintiffs' Motion for Preliminary Injunction Pending Appeal (Doc. 47) and Plaintiffs filed the present Motion for Reconsideration (Doc. 46). On May 27, the Ninth Circuit stayed all proceedings on appeal pending this Court's ruling on Plaintiffs' Motion for Reconsideration. *See Webber v. U.S. Dep't of Homeland Security*, No. 25-2717, Dkt. 19.1 (9th Cir. May 23, 2025).

LEGAL STANDARD

Reconsideration of a court's order is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). A motion for reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citation omitted). "A rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably

4

have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).

The movant bears the burden of proving reconsideration is proper. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Ultimately, it is within the court's discretion whether to grant a motion for reconsideration. *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) ("Whether or not to grant reconsideration is committed to the sound discretion of the court.").

DISCUSSION

## I.     Reconsideration of the Exclusive Jurisdiction of the Court of International Trade

### A. Conflicting Authority from the Federal District Courts on the Issue of Jurisdiction

As an initial matter, since the Court issued its Order on April 25, 2025, it appears the federal district courts are now in conflict as to whether the CIT has jurisdiction over the President's tariffs imposed under the IEEPA.

On May 20, 2025, in *Emily Ley Paper, Inc. v. Trump*, 3:25-cv-00464-TKW-ZCB, Dkt. 37 (N.D. Fla. May 20, 2025), the District Court for the Northern District of Florida transferred a materially similar action to the CIT. As here, the court relied on the Court of Customs and Patent Appeals'[1] decision in *Yoshida*

---

[1] The Court of Customs and Patent Appeals is the predecessor to the CIT.

*International, Inc.*, 526 F.2d 560, to conclude that plaintiffs' challenge to the President's tariffs fell within the exclusive jurisdiction of the CIT pursuant to Section 1581(i)(1)(B). *Id.*, Dkt. 37 at 15.

On May 28, in *V.O.S. Selections, Inc. v. Trump*, No. 1:25-cv-0066-GSK-TMR-JAR, Dkt. 55 (Ct. Int'l Trade May 28, 2025), the CIT issued a sweeping order blocking most of the President's global tariffs invoked under the IEEPA. In that case, plaintiffs and their counterparts in *Oregon v. United States Dep't of Homeland Security* challenged the President's imposition of the Worldwide and Retaliatory Tariffs contained in Executive Orders 14257, 14266, 14193, 14194, and 14195. *Id.*, Dkt. 55 at 15–16. Notable here, the CIT expressly invoked its jurisdiction over challenges to the President's tariffs pursuant to Section 1581(i)(1)(B), opining that "an action involving a challenge to a presidential action that imposes tariffs, duties, or other import restrictions is one that arises from a 'law providing for' those measures." *Id.* at 18. The CIT concluded that plaintiffs' claims—successful or not—"fall under this court's exclusive jurisdiction." *Id.* at 19.

Thereafter, on May 29, the District Court for the District of Columbia in *Learning Resources, Inc. v. Trump*, 1:25-cv-01248-RC, Dkt. 37 (D. Columbia May 30, 2025), came to the opposite conclusion. There, the court declined to transfer jurisdiction to the CIT, finding that "because the IEEPA is not a 'law . . . providing

6

for tariffs [under Section 1581(i)(1)(B)],' this Court, not the CIT, has jurisdiction over this lawsuit." *Id.*, Dkt. 37 at 27. In reaching its decision, the court declined to follow *Yoshida International* on the basis that it was neither binding nor persuasive authority. *Id.*, Dkt. 37 at 23. Also in reaching its decision, the court disagreed with the reasoning set forth by this Court, the Northern District of Florida in *Emily Ley Paper*, and the CIT in *V.O.S. Selections*, all of which looked to *Yoshida International*. *Id.* ("This Court respectfully disagrees with [the District of Montana and Northern District of Florida's] analyses. And the Court finds it even less persuasive that the CIT, which is bound by *Yoshida*, is exercising jurisdiction over lawsuits raising similar claims.").

Because the CIT has made an express finding of its own jurisdiction, the Court concludes that transfer remains the appropriate action. *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836–37 (9th Cir. 2004) ("Because the CIT may be able to hear this case," "the prudent thing to do is direct the district court to transfer to the CIT so that the CIT can determine the question of its own jurisdiction.") (internal quotation and citations omitted). Consolidating matters with the CIT is particularly important to help ensure a necessary "degree of uniformity and consistency" throughout the United States on the issue of the President's tariffs imposed under the IEEPA. *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1586 (Fed. Cir. 1994).

7

**B. Jurisdiction over Indian Tribes under the Indian Commerce Clause**

In seeking reconsideration, Plaintiffs argue—for the first time—that this Court has "*exclusive*" jurisdiction over Indian tribes pursuant to the Indian Commerce Clause and 28 U.S.C. § 1362, and that the CIT, which oversees international trade matters, does not have authority over tribal commerce. (Doc. 46 at 4–5, 9–10.) Plaintiffs allege that the Court committed clear error because this matter is based on the Indian Commerce Clause, and "the *only* court that has subject matter jurisdiction over enrolled Blackfeet tribal members['] assertion of their Constitutional right that Congress alone has the power to regulate them is this Court." (*Id.* at 4.)

Relying on *Cherokee Nation v. Georgia*, 5 Pet. 1 (1831), and *Cotton Petroleum Corp v. New Mexico*, 490 U.S. 163 (1989), Plaintiffs explain that the Commerce Clause "distinctly separates Indian Tribes from foreign nations," and the "Constitutional issue of whether the Canada Orders violate Congress's exclusive and plenary power to regulate commerce with the Indian Tribes lies exclusively with this Court." (Doc. 46 at 8, 9–10.) The Commerce Clause, Article 1, Section 8, Clause 3 of the U.S. Constitution, provides that "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." In *Cherokee Nation*, the Supreme Court observed that "[t]he objects to which the power of regulating commerce might be

8

directed, are divided into three distinct classes—foreign nations, the several states, and Indian Tribes. When forming [Article I, Section 8, Clause 3], the convention considered them as entirely distinct." 5 Pet. at 18. Similarly, in *Cotton Petroleum Corp*., the Supreme Court observed that while the central function of the Interstate Commerce Clause is to maintain free trade among the states, "the central function of the Indian Commerce Clause is to provide Congress with the plenary power to legislate in the field of Indian affairs." 490 U.S. at 192.

Here, as an initial matter, "[a] rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc*., 229 F.3d at 890 (citation omitted). It appears, however, that Plaintiffs have used this Motion as an avenue to raise arguments they ostensibly failed to raise in opposition to Defendants' Motion to Transfer. There is also no indication that these points could not have been raised in the initial briefing. Notwithstanding the impropriety of raising arguments for the first time here, the Court will consider Plaintiffs' concerns out an abundance of caution to ensure that the enrolled tribal members have a forum to litigate their claims.

Turning now to Plaintiffs' arguments, the Court declines to alter its previous judgment for three reasons. First, the Court does not have "exclusive" jurisdiction over enrolled members of Indian tribes pursuant to Section 1362. Section 1362

provides district courts with "original jurisdiction of all civil actions, brought by any Indian tribe . . . wherein the matter in controversy arises under the Constitution, law, or treaties." However, as Defendants correctly observe (Doc. 53 at 4), Section 1362 applies only to Indian tribes—its grant of jurisdiction "is not available to individual Indians." *Dillon v. Montana*, 634 F.2d 463, 469 (9th Cir. 1980).

Plaintiffs attempt to distinguish *Dillon* on the grounds that *Dillon* addressed the issue of whether Section 1362 provides an exception to the Tax Injunction Statute's jurisdictional bar. (Doc. 54 at 8–9.) Plaintiffs argue that Defendants "miss[] the constitutional nature" of their claims and ignore the Supreme Court's understanding that commerce with the Indian tribes means "commerce with *the individuals* composing those tribes." (*Id.* at 9) (citing *Haaland v. Brackeen*, 599 U.S. 255, 274–75 (2023)). The Court disagrees. While "Indian tribes" may be more broadly construed for purposes of the Indian Commerce Clause, the authority interpreting "Indian tribes" as used in Section 1362—whether that be within the context of a state-law conversion claim, *see Gigena v. Finch*, 2023 WL 5055336, at *3 (E.D. Cal. Aug. 8, 2023), denial of Native American status in violation of 8 U.S.C. § 1401, *Daily v. Washington*, 2019 WL 13246673, at **1, 2 (E.D. Wash. Jan. 11, 2019), or as a jurisdictional exception to the Tax Injunction Act, *Dillon*, 634 F.2d at 469—clearly understand Section 1362's jurisdictional grant to exclude

individual Indians. Therefore, because Plaintiffs bring this action as individual "members of the Blackfeet Nation," they cannot rely upon the jurisdictional grant provided for by Section 1362.

In any event, it is unlikely that Section 1362 would override Section 1581(i)'s grant of exclusive jurisdiction to the CIT. Nowhere does Section 1362 state that its jurisdiction is "exclusive"; rather, the statute only extends the general grant of federal-question jurisdiction found in 28 U.S.C. § 1331 to Indian tribes. *See Newtok Village*, 21 F.4th 608, 616 (9th Cir. 2021) (observing that "Sections 1331 and 1362 are now largely duplicative."). And when "faced with conflicts between the broad grants of jurisdiction to the district courts and the grant of exclusive jurisdiction to the Court of International Trade," district courts must "resolve those conflicts by upholding the exclusivity of the Court of International Trade's jurisdiction." *Universal Fruits & Vegetables Corp.*, 370 F.3d at 836 (alterations, citation, and internal quotations omitted). Plaintiffs' characterization of the "exclusive" jurisdictional grant allegedly contained in Section 1362 is simply unsupported. (*See* Doc. 46 at 10) (arguing that "[t]he District Court has exclusive jurisdiction over Indian Tribes as set out in 28 U.S.C. § 1362).

Second, the inclusion of a constitutional claim does not preclude the CIT from exercising its otherwise lawful jurisdiction. *See* 28 U.S.C. § 255 (authorizing the chief judge of the CIT to "designate any three judges of the court to hear and

11

determine any civil action which the chief judge finds: (1) raises an issue of the constitutionality of an Act of Congress, a proclamation of the president or an Executive order; or (2) has broad or significant implications in the administration or interpretation of the custom laws."); *see also Pat Huval Rest. & Oyster Bar, Inc. v. United States*, 547 F. Supp. 2d 1352, 1354, 1357 (Ct. Int'l Trade 2008) (finding the court has jurisdiction pursuant to Section 1582(i)(2) over plaintiffs' constitutional claims arising out of the Continued Dumping and Subsidies Offset Act of 2000); *Yoshida International*, 526 F.2d at 584 (tariffs enacted by the president pursuant to the TWEA constitutional).

Finally, at its core, the FAC challenges a Presidential action imposing duties, tariffs, or other import restrictions on a foreign nation under the IEEPA and Section 232 of the Trade Expansion Act. (*See* Doc 15 ¶ 2) (Plaintiffs challenge the constitutionality of the Canada Orders invoked under authority of the IEEPA and Trade Expansion Act). As this Court previously found, challenges to actions brought under the IEEPA and Trade Expansion Act fall within Section 1581(i)'s grant of exclusive jurisdiction. (*See* Doc. 40 at 17); *see also V.O.S. Selections*, No. 1:25-cv-00066-GSK-TMR-JAR, Dkt. 55 at 18; *see also Emily Ley Paper, Inc.*, 3:25-cv-00464-TKW-ZCB, Dkt. 37 at 15. The particular legal arguments Plaintiffs advance do not alter this analysis; though Plaintiffs, as enrolled members of the Blackfeet Nation, certainly bring important and unique claims for relief—

constitutional or otherwise—Plaintiffs fail to demonstrate how this overrides the CIT's grant of exclusive jurisdiction over actions "aris[ing] out of any law of the United States providing for . . . tariffs, duties, fees or other taxes." 28 U.S.C. § 1581(i)(1)(B). Plaintiffs "may not, by creatively framing [their] complaint, circumvent a congressional grant of jurisdiction" to the CIT. *Universal Fruits & Vegetables Corp.*, 370 F.3d at 836 (citation omitted).

As a final note, Plaintiffs argue that the transfer Order is "in effect dismissal under Rule 12(b)(1), which addresses the fundamental question of jurisdiction." (Doc. 46 at 8.) This mischaracterizes the Court's Order. In transferring this matter to the CIT, the Court made no judgment on the merits, nor did it dismiss this case; all matters aside from Defendants' Motion to Transfer (Doc. 18), including Plaintiffs' Motion for Preliminary Injunction (Doc. 3) and a pending Motion to Intervene (Doc. 31), were kept alive for the CIT's initial review. *See Ukiah Adventist Hosp. v. Fed. Trade Comm'n*, 981 F.2d 543, 547 (D.C. Cir. 1992) ("A transfer order keeps the case alive; an order dismissing the case brings the action to an end.").

The Court therefore declines to alter or amend its prior findings. Plaintiffs have failed to demonstrate how this Court has "exclusive" jurisdiction pursuant to Section 1362, nor how the Indian Commerce Clause precludes relief for enrolled tribal members at the CIT. Rather, as will be discussed in greater detail below, it

appears the opposite is true: the CIT has historically exercised jurisdiction over claims brought by enrolled tribal members challenging import and duty-related actions. *See Akins v. Saxbe*, 380 F. Supp. 1210, 1214, 1217 (D. Me. 1974); *United States v. Garrow*, 88 F.2d 318 (C.C.P.A. 1937).

### C. Review of Jay Treaty Claims Brought by Tribal Members

Plaintiffs argue that while *Akins* and *Garrow* pertained to *congressional* regulation of commerce with the Indian tribes, the issue here is whether the *executive* can regulate such commerce. (Doc. 46 at 11.) Plaintiffs further contend that the "[t]he CIT is not set up to address and weigh constitutional contextual history of the 1700s[,] [n]or is it set up to address foundational issues related to Native American law under the Constitution." (Doc. 54 at 7.) As above, Plaintiffs ask the Court to consider an argument raised here for the first time. Indeed, in responding to Defendants' Motion to Transfer, Plaintiffs failed to even mention— let alone raise jurisdictional arguments related to—the Jay Treaty of 1794. As above, there is no indication this argument could not have been raised in the initial briefing. That notwithstanding, the Court will again consider Plaintiffs' concerns out of an abundance of caution.

In *Garrow*, the Court of Customs and Patent Appeals considered an appeal brought by an Indigenous woman residing in Canada challenging congressional imposition of duties as a violation of Article III of the Jay Treaty. 88 F.2d at 318–

20, 324. Later, in *Akins*, members of several Indian tribes and an Indian-owned agricultural cooperative sought declaratory judgment that the Jay Treaty exempted them from any custom duties goods purchased in Canada and brought into the United States for personal use. 380 F. Supp. 1210 at 1212. The district court found that plaintiffs' claims, which challenged customs importation matters, fell within the exclusive jurisdiction of the Customs Court.[2] *Id.* at 1214–17.

Here, contrary to Plaintiffs' concerns, there is simply no basis for this Court to believe that the CIT—which, as just discussed, has historically considered issues related to Federal Indian law, specifically the Jay Treaty—cannot handle the intricacies of Plaintiffs' claims. Indeed, in *Garrow*, the Court of Customs and Patent Appeals engaged in a relatively detailed historical analysis of the Jay Treaty. 88 F.2d at 319–24. And second, though Plaintiffs are correct in that *Akins* and *Garrow* involved challenges to congressional—as opposed to executive— action, Plaintiffs fail to explain how the acting branch of government has any bearing on the CIT's jurisdiction.

Rather, Section 1581(i) provides that the CIT shall have exclusive jurisdiction "commenced against the United States, its agencies, or its officers, that arises out of *any law* of the United States . . . providing for tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of

---

[2] The Customs Court is the predecessor the CIT.

revenue." (emphasis added). This Court is unaware of any requirement that the challenged "law" arise out of a specific branch of government. Indeed, the CIT contemplates challenges to laws arising from both congressional and executive actions. *See* 28 U.S.C. § 255 (chief judge of CIT may appoint three judge panel to hear issues related to constitutionality of an Act of Congress or proclamation of the President or Executive order). Therefore, with respect to jurisdiction, it appears Plaintiffs raise a distinction without a difference. Because the CIT may hear challenges to any law providing for tariffs, including those brought by Indian tribal members, the Court declines to alter its previous finding.

### D. "Want" of Jurisdiction pursuant to 28 U.S.C. § 1631

Finally, Plaintiffs argue that in transferring this case to the CIT, the Court failed to find a "want" of jurisdiction as required by 28 U.S.C. § 1631. (Doc. 54 at 11.) Plaintiffs miss the implications of Section 1581(i)'s grant of exclusive jurisdiction. By determining that the CIT has jurisdiction, "it follows" that this Court "lacks jurisdiction over the challenges [] currently pending." *United States v. U.S. Shoe Corp.*, 523 U.S. 360, 365 n.3 (1998); *see also V.O.S. Selections*, 1:25-cv-00066-GSK-TMR-JAR, Dkt. 55 at 18 (quoting 28 U.S.C. § 1337(c) ("The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade."))

CONCLUSION

Exercising the discretion afforded to it under Rule 59(e), the Court declines to alter or amend its judgment for the reasons stated above.

Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Reconsideration (Doc. 45) is DENIED.

DATED this 2nd day of June, 2025.

_____

Dana L. Christensen, District Judge
United States District Court